THOMAS S. BEALS, Executor, &c., of THOMAS BEALS, Deceased, Appellant, v. THE HOME INSURANCE COMPANY, Respondent.

*Insurance— Option to replace Property—Time to Elect.*

Where, in an insurance policy, the company annexes a condition reserving to itself the option to replace the property destroyed by fire, within a reasonable time, and gives notice of their election to do so within thirty days after notice of loss, the insured, refusing to permit the company to replace the property according to the terms of such condition, cannot recover in an action on such policy.    The election to rebuild converts the insurance to a building contract.

This is an appeal by the Plaintiff from a judgment of the Supreme Court in the Seventh District, entered in favor of the Defendant, upon a nonsuit, granted at the Ontario Circuit, in February, 1861.

The action was upon a policy of insurance, made by the Defendants, March 3, 1858, by which they insured the Plaintiff's testator, Thomas Beals, against " loss or damage by fire to the amount of $4,000, on his brick Franklin House Block, occupied for stores and hotel purposes, and situate on the corner of Main and Coach streets, in the village of Canandaigua, N. Y., and described in application No. 117, which constitutes a part of this policy."

In addition, there was an insurance upon the same property, noted on the Defendant's policy, of $5,000, in the Norwich Insurance Company, of Connecticut; $4,000 in the Albany Mutual, N. Y.; and $1,000 in the Ontario and Livingston Mutual Company; making a total insurance of $14,000.

It was provided in the Defendant's policy, that it was made and accepted in reference " to the terms and conditions hereunto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto in all cases, not herein otherwise specially provided for."

It was also provided in the policy, that any loss should be paid at the actual cash value of the property destroyed, within

sixty days after due notice and proof of loss, made in conformity to the conditions annexed.

And that if, thereafter, the assured should make any other insurance on the same property, and not give reasonable notice of it, and have it indorsed, or acknowledged in writing, the policy was to cease and be of no effect.

One of the conditions annexed to the policy was to the effect that, when a policy was issued, upon a survey and description of certain property, the survey and description should be taken and deemed to be a part and portion of such policy, and a warranty on the part of the assured.

In the survey upon which the present policy was issued, the property insured was represented to be built of brick. This application and survey was prepared and filled up by the agent of the Defendant, at Canandaigua, who was well acquainted with the property, and by him presented to the Plaintiff for his signature; in fact, there was, at the time, attached to, and used with the main building as a hotel, a dining-room of one story, 30 by 50 feet, built entirely of wood. It was claimed on the part of the Defendants that this fact vitiated the policy.

It appeared also, at the trial, that the insurance for $2,000 in the Ontario and Livingston Company expired in November, 1858, and a new policy was taken out for the same amount, in the Lamar Insurance Company in lieu of it. The policy in the Lamar Company was obtained through the agent of the Defendants, at Canandaigua, who knew that it took the place of the other policy, which then ceased. It was also claimed on the part of the defence, that this policy in the Lamar Company, not having been indorsed on the Defendant's policy, or acknowledged in writing, was fatal to the Plaintiff's action.

The policy also contained the following condition: " In case of any loss or damage to the property insured, it shall be optional with the company to replace the articles lost or damaged, with others of the same kind and quality, and to rebuild or repair the building or buildings within a reasonable time, giving notice of their intention so to do, within thirty days after having received the

preliminary proofs of loss required by the ninth article of these conditions." In each of the other policies upon the property destroyed, is a condition in respect to rebuilding similar to that in the policy of the Defendants.

The property insured was destroyed by fire on the 11th day of February, 1860.

The proofs of loss were made on the 17th day of February, and received by the agent of the Defendants at Canandaigua.

Within the time provided in the condition for that purpose, each of the four several companies gave notice to the assured of its election and intention to rebuild the Franklin House Block, and made preparations, and solicited permission to do so, but the assured refused to allow them or either of them to rebuild. The first notice was verbal, in an interview between officers and agents of the companies, and the insured, at the Canandaigua Hotel, on the 1st of March, 1860.

Written notice was served by the Defendant on the 8th of March. Other notices were served subsequently by several companies; but the assured, at all times, refused to allow them, or either of them, to rebuild.

It was insisted on the part of the defence, that there had been an election to rebuild, under the condition annexed to the policy, and that this action could not be maintained, and so the Court below, on the whole case, held, and the Plaintiff was nonsuited.

The General Term affirmed the judgment of the Court below.

*J. H. Reynolds* for Appellant.

*T. R. Strong* for Respondent.


HUNT, J.—The motion to nonsuit the Plaintiff was based upon several grounds. Grave questions are presented, upon many positions urged by the parties. I shall consider one only, which in my view of it is sufficient to decide the case.

The action was upon a policy of insurance to the amount of $4,000 upon the Plaintiff's "brick Franklin House Block, in the village of Canandaigua." By the terms of the policy, the Defendants undertook " to make good to the insured " his loss to the amount

mentioned.    By another clause, it was agreed that " the loss or
damage was to be estimated according to the true and actual
cash value of the property, and to be paid within sixty days
after due notice, and proof thereof, made by the assured, in con-
formity to the conditions annexed to the policy." It was further
provided, that the policy was made and accepted in reference to
the terms and conditions thereunto annexed, " which are to be
used and resorted to, in order to explain the rights and obligations
of the parties, in all cases not herein otherwise specially provided
for." Number ten of the conditions provided, that " in case of
any loss or damage to the property insured, it shall be optional
with the company to replace the articles lost or damaged, with
others of the same kind and quality, and to rebuild or to repair
the building, or buildings, within a reasonable time, giving notice
of their intention to do so, within thirty days after having received
the preliminary proofs of loss, required by the ninth article of
these conditions."

Immediately after the occurrence of the loss, without giving the
Defendants an opportunity to exercise the option afforded by this
provision, the Plaintiff laid his foundation, and proceeded in the
erection of a new and different kind of building from the one
destroyed.    Within the thirty days, the Defendants did give notice
that they should avail themselves of this option, which reserved
to them the right of rebuilding the structure which had been
destroyed.    The Plaintiff refused to permit them to rebuild, and
proceeded in the completion of the building he had himself com-
menced.

In the recent case of Morrell *v.* The Irving Fire Insurance
Company (33 N. Y. 429), this Court held that the exercise of the
option by the company, under condition ten above quoted, con-
verted the contract of insurance into a building contract; that
when the insurer, after giving such notice, only partially per-
formed the contract to rebuild, the rule of damages was the
amount it would take to complete the building, by making it
substantially like the one destroyed, in addition to what had
already been expended thereon ; and that after the notice of

election, the amount named in the policy ceased to be a rule of damages.

Applying to the present case the reasoning there put forth, we have this result—that, after the giving of notice by the Defendants that they would avail themselves of their rights under the tenth condition of the policy, they ceased to be insurers, and their liability was no longer measured by the policy, but they became parties to a contract, by which they agreed to erect for the Plaintiff a building substantially like that destroyed, and for which the consideration had been paid to them in advance.

Upon such a contract, it would be quite plain, that the Plaintiff could recover nothing from the Defendants, as damages for non-performance, when he had himself refused to permit the erection of the building by the Defendants. To this view of the case the Plaintiff makes various objections, some of which I will now consider.

The Plaintiff argues that the tenth condition is not a part of the policy, but is only to be resorted to for explanation of obscurity, or ambiguity, in the policy itself; that there is no obscurity in the clause respecting the terms of payment, where it is provided that the same is to be paid in cash, within sixty days after notice of the loss ; and that the terms of the tenth condition are inapplicable to the case before us.

I understand the provisions of the policy, and the terms of the condition, to constitute together one instrument, and I see no conflict between them. The substance of the whole agreement is an undertaking to indemnify the Plaintiff against loss by fire to the extent of $4,000, upon the property designated. This amount, if needed for indemnity, the Defendants agree to pay to the Plaintiff, and they reserve to themselves the right to pay it in money, or by the erection of another building. They do not agree, in the body of the policy, to pay the amount in cash, or in money even, but simply to pay. Standing alone, no doubt this would mean a payment in money, but it cannot be deemed to create a conflict between the policy and the condition. The provisions are entirely in harmony (Tolman *v.* The Manufacturers'

Insurance Company, 1 Cushing, 73, 76). In that case, the policy contained a proviso allowing the Defendants, instead of paying in money, to replace the property with other of the like kind and quality at the option of the Defendants. After a loss, the insured indorsed on the policy, "Pay the loss under the within policy to Joseph A. Tolman," to which the Defendants assented in writing. The Plaintiff claimed that the Defendants had thereby lost their option, and must pay in money. The Court held otherwise, saying, "To pay is defined by lexicographers, ' To discharge a debt, to deliver a creditor the value of a debt, either in money or in goods, to his acceptance or satisfaction, by which the obligation of the debt is discharged.' We consider the effect of this indorsement to be the same as if written out more full in this manner : ' Pay or discharge the obligation arising from the loss under the policy to or for the benefit of Joseph A. Tolman.' " It was held that the company still retained the right to pay the money, or to replace in kind, at their option. In the present case, by its just construction, the contract reserves to the Defendants the right to pay the loss in money or to indemnify the party, by furnishing him with a building of like character, and of equal value, with the one destroyed.

Again, it is claimed by the Plaintiff, that the refusal to permit the Defendants to rebuild, subjects the Plaintiff to the loss of interest only, and that he cannot thereby be deprived of all remedy whatever. In the case of a tender in payment of an admitted debt, this view would be correct. This is, however, a building contract simply. Upon the case of Morrell *v.* Irving Insurance Company, it is as if there had never been an insurance between the parties, or any loss of a building by fire, but the Plaintiff, being the owner of the ground, had received a contract from the Defendants, to erect thereon a building, like the Franklin Hotel, and had paid them $4,000, as the consideration therefor. The case has none of the elements of a tender. It is a contract to build simply, and no default can attach to the proposed builder, nor can damages be recovered from him, so long as he is ready and able to perform the work on his part. If this rule subjects

the Plaintiff to a loss, it results from his own acts.   If he refused to accept satisfaction in the mode provided by the contract, and put it out of the power of the Defendants so to perform, it is not the fault of the Defendants.   The Plaintiff alone is responsible for the result.

It is further claimed, that no injury can accrue to the Defendants in compelling them to pay the amount of the insurance money, provided the Plaintiff is allowed to show, on the trial, that they could not have rebuilt for less than that amount, and thus have the damages reduced to the smallest sum.   Such was not the contract of the parties, and the evidence in the present case shows the fallacy of the argument.   The Plaintiff claimed, and proved, that the buildings burned were worth $20,000.   The Defendants proved, or offered to prove, that they had entered into a contract, with responsible mechanics, to replace them for the sum of $10,000.   Which of these statements was correct, or was the truth to be found at an intermediate point ?   As claimed by the Plaintiff, this question would be answered by the jury.   If the Defendants are correct in their construction of the contract, they could answer the question themselves.   They preferred to settle the question in their own manner, by rebuilding, to leaving it to the jury.   Such was the agreement between the parties, and it was to guard against over-estimates, and the hazard of a jury trial, where the sympathies might be in favor of their own friends, who had met with misfortune, and against a non-resident, or a rich corporation, that this provision was probably inserted. Whatever may have been the cause of its insertion, it is there, and forms a part of the contract; and when claimed, the Defendants are entitled to have it enforced.   This argument, in effect, destroys the condition.   In no event is the insured entitled to recover more than the cash value of the property; and to say that the insurer is not entitled to rebuild, under the condition, if the insured shall only call on him for the cash value, or the cost of rebuilding, as found by a jury, is simply to annul the condition number ten.

It is said, also, that, regarding the policy and the election under

it as a building contract, it is so indefinite and uncertain that it cannot be enforced. If the Plaintiff had accepted the offer, this question might have arisen. It is now a sufficient answer to it, that the Plaintiff positively refused to the Defendants all rights in any form, under the condition referred to, and proceeded in his own building arrangements. I do not, however, consider the objection a formidable one. The Plaintiff's hotel building was destroyed by fire, and the Defendants contract to replace the same. This involves an agreement to erect a building of the same general character, as to materials, size, and form, as the one destroyed, and within a reasonable time. This would be sufficiently definite to answer the requirements of the law. In practice there would be no difficulty. Negotiation and mutual self-interest would prescribe the details, and accommodate the building to the wishes of the owner.

I see no room for raising a question of the good faith of the offer to rebuild. It was a question of contract simply. The Defendants made the offer, and it was within the terms of the agreement. No question of motive or good faith can arise. It is a simple exercise of a right given by the terms of the contract. The notice of election was served by the agent of the company, and was signed by their vice-president, Wilmarth; and has throughout been adopted and acted upon by the Defendants, and has been set up as their defence in this action. No question was made of the authority, at the time of serving the notice, and the Plaintiff based his refusal to accept the offer, on other grounds. No objection was made at the trial to Mr. Wilmarth's authority to give the notice. That seems to have been assumed, while the right of Mr. Salisbury to make the service of the notice was contested. There was no ruling, and no exception taken, at the trial, on this branch of the case, and it cannot now be presented.

I am of the opinion that the refusal of the Plaintiff to allow the Defendants to rebuild when they had, in due time, given notice of their election so to do, and his proceeding himself to erect a building on the same premises, justified the nonsuit, and that the judgment should be affirmed.

GROVER, J.—The first question I shall consider is, whether the option given to the Defendant, by the tenth condition attached to the policy, giving the Defendant the right, in case of loss or damage to the property insured, to rebuild or repair the loss, making the building the same as before, by giving notice of its intention so to do in thirty days after service of proof of loss, and prosecuting and completing the work in a reasonable time, is valid. The counsel for the Plaintiff insists that it is not, for the reason, among others, that the Defendant had no power by its charter to enter into building contracts. It is a sufficient answer to this objection, that no such question was raised upon the trial. He further insists that it is not, for the reason that the policy itself contains a clause that, in case of loss, the Defendant shall pay the same in sixty days after service of the proof thereof; and insists that the option given by the condition, being inconsistent with this clause, must be held inoperative. This view is rendered somewhat plausible, from the fact that the clause in the policy, referring to the conditions, provides that they shall be resorted to in order to explain the rights and obligations of the parties in all cases not therein otherwise specially provided for. If the option given by the condition is really inconsistent with the provision of the policy making the loss payable in sixty days after service of proofs, it would follow, I think, that the condition, in this respect, is not applicable. But is the condition inconsistent ? · The policy provides for payment in sixty days after service of proof of loss. This would be payment in cash. The option gives the right to satisfy the loss by reconstructing, or repairing the building insured, if the Defendant so elected. There is no such contradiction in these modes of making satisfaction as is contended for. It simply provides two modes for satisfying the obligation of the Defendant, at its election, and the right should be preserved to the Defendant, unless there is a plain repugnancy ; and, in that event, the option in the condition should be held void. The provision in the policy for payment in sixty days, is not repugnant to the condition. That would be operative, and control the rights of the parties, in case the Defendant did not avail itself of

the right to rebuild by its election and service of notice thereof in thirty days from service of proof of loss. In case the Defendant did not elect to rebuild, as provided in the condition, the sum insured, in the absence of provision in the policy, would have been payable in cash, in thirty days after service of proof of loss. The only effect of the provision in such event was, to give the Defendant thirty days additional time for payment of the loss. While the right of election as to the mode of making satisfaction continued, the Defendant, of course, could not be called on for payment. The case shows that the Defendant did, within the thirty days, elect to rebuild, and served notice thereof upon the assured, and that he refused to permit them to rebuild. As to these facts there was no controversy upon the trial.

The counsel for the Plaintiff insists that it did not appear that the officer of the Defendant, signing the notice, was authorized by the company—that the assured objected on this ground, at the time of the service of the notice. I think proof of authority should have been furnished, but no such objection was made. Upon the trial, it appeared that the Defendant recognized the authority of the officer, and approved his act. This, I think, was sufficient.

The counsel further insists that, although the Defendant had the right of rebuilding, yet being indebted to the assured to the amount of the insurance, the offer by the Defendant to rebuild, and the refusal by Beals, the assured, to permit it, did not discharge the debt, but only gave the right to Defendant to recover its damages. In other words, he insists that the Defendant is still liable to pay what it would cost it to reconstruct the building. The answer to this position is, that after the Defendant had elected to rebuild, and served the notice upon the assured, it became bound to do this. It no longer had the right to pay the money. Its position was that of a contractor, who had received payment in advance. In such a case, it would hardly be contended that a recovery could be had, when the contractor was ready and willing to perform, and performance was prevented by the other party. Upon a tender by a debtor of money, the law requires the tender to be kept good; consequently, the creditor

may still recover his money.    It requires no such thing of a contractor, to build.    If he is prepared, at the time, to perform, and the other party precludes him therefrom, the law does not require that he should be always ready.    This would be unreasonable.

This disposes of the case, and an examination of the other questions would be superfluous.    The judgment must be affirmed.

Concurring, PARKER, DAVIES, and SCRUGHAM, JJ.

Affirmed.

> JOEL TIFFANY,
> State Reporter.