STATE BANK OF CHILTON and another, Respondents, vs. CITIZENS MUTUAL FIRE INSURANCE COMPANY OF JANESVILLE, WISCONSIN, Appellant.

*December 7, 1933—January 9, 1934.*

8

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondents there was a brief by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox*.

ROSENBERRY, C. J.   The principal contention made and argued here is that the election of the defendant to rebuild the barn operated to make a new contract by virtue of which the defendant might discharge its liability under its policy by rebuilding the barn.   On behalf of the defendant it is claimed that this option or right to elect is conclusive not only upon the owner of the property but upon the mortgagee under the subrogation clause.   By sec. 203.06, Wis. Stats., fire insurance companies are prohibited from issuing or delivering policies which do not conform to the standard policy with certain exceptions which are not material here.   By sec. 203.06 (2), Stats., it is provided that printed or written forms of description and specifications or schedules of the property covered by any particular policy and any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk (which facts or conditions shall in no case be inconsistent with or a waiver of the conditions of the standard policy herein provided for) may be written upon or attached or appended to any policy issued on property in this state.

In *Temple v. Niagara Fire Ins. Co.* 109 Wis. 372, 85 N. W. 361, it was held that the standard policy of fire insurance is a statutory law as well as a contract and should be treated and construed accordingly.   In that case it was claimed that under the valued-policy provision, now sec. 203.21, the insurer under a standard policy of fire insurance could not exercise the option contained in the standard policy to repair, rebuild, or replace the property but could only discharge its liability by a payment in cash.   The court said:

"The difficulty with this contention is that, although in the form of a contract, yet each of the seven policies is in the

terms expressly prescribed by the statutes. . . . It is the only form of policy which either of the defendants had the right to issue upon the property in question, and the only contract for such insurance which the parties had the power to make. . . . The clause in the policy giving the defendants the optional right to rebuild was not made a part of the policy merely by virtue of the agreement of the parties, but also by the express command of the statute."

The plaintiff bank concedes this but argues that the contract between it and the insurance company and as held by the trial court is "a special contract between the parties and superimposed upon the provisions operating between the owner, Mortell, and the defendant insurer." The trial court further said:

"It seems to the court that the plain effect of the contract within the contemplation and purpose of the parties was to make the mortgage clause superior, paramount, and controlling over the option of the defendant to rebuild the barn."

A determination of the question raised requires us to analyze at least in part the standard fire policy. It is in form a contract between the owner and the insurance company, the terms of which are prescribed by statute. The mortgagee has an interest in the property. The owner had agreed in the mortgage to protect this interest by insurance, which agreement he carried out by procuring the policy in question. The mortgagee paid no part of the premium and entered into no obligation to pay it. If the mortgagor failed to pay the premium, the mortgagee could continue the policy by payment of the premium, but it did not agree to pay it. It seems clear, therefore, that the contract so far as the mortgagee is concerned is one for the benefit of a third party—in this case the plaintiff bank. For the benefit of the mortgagee certain stipulations are made to the general effect that breach of the contract by the mortgagor in cer-

tain particulars shall not work a termination of the contract as to the mortgagee. One having a mortgagee interest in property may protect that interest in one of three ways: (1) under a simple loss payable or option mortgage clause, the mortgagee may be simply an appointee of the insurance fund; (2) by virtue of the standard mortgage clause, often referred to as the subrogation clause such as the one attached to the policy in this case; (3) by a policy procured by and issued to the mortgagee. 5 Couch on Insurance, secs. 1215-1215d. If a mortgagee can, under the clause attached to the standard policy in this case, protect his interest against loss by fire by a contract which does not include a provision that the insurer shall have a right to repair, restore, or rebuild, he is able to do something that no other owner of property can do. It is true as it is held in many cases that the standard mortgage clause is one for the benefit of the mortgagee and to a certain extent is a contract directly between the mortgagee and the insurer, but our statute prohibits the issuance of any policy of insurance which is not in the statutory form and does not contain the statutory terms. How far the insurer can go in waiving the provisions of the standard fire insurance policy as to a mortgagee it is not necessary for us to determine. Under the clause in question, there has been no attempt to go farther than to provide against those things which may be done by the owner and which when done constitute a breach of the contract of insurance. It is considered both upon reason and authority that the standard mortgage clause being for the benefit of the mortgagee, a third person, when the mortgagee asserts a right under the contract he asserts it subject to all the terms and conditions of the contract except those which are expressly waived by the insurer in the rider. This conclusion is fortified on grounds of public policy. The primary purpose of inserting the clause with reference to the repair, restoration, and re-

building is to prevent intentional overvaluation of the insured property and the recovery of such overvaluation under the valued-policy law. The clause is for the benefit of the insurer. *Brinley. v. National Ins. Co.* 11 Met. (Mass.) 195; *Beals v. Home Ins. Co.* 36 Barb. 614; affirmed, 36 N.Y. 522.

We have found no case directly in point. However, in *Tolman v. Manufacturers Ins. Co.* 1 Cush. (55 Mass.) 73, it was held that where the insured had directed the amount of the loss to be paid to another and the insurers assented thereto, such an assent operated only as an assignment of the claim of the insured and did not affect the right of the insurers to replace the property lost and destroyed, and the court held that replacement of the property operated as a discharge of the obligation although the indorsement read: "Pay the loss under the within policy to Joseph A. Tolman."

The parties to the contract being forbidden by statute to embody therein anything which shall be inconsistent with or a waiver of any of the provisions or conditions of the standard policy, it must be held that, except as specified in the stipulations made in the standard mortgage clause, the right of the mortgagee to recover is subject to the terms and conditions of the standard policy. We need not determine, for the reason that no attempt has been made to do so, whether or not the insurer could by express contract modify the provision with respect to repair, restoration, or rebuilding as to a mortgagee. An argument is made here that the mortgagee sustains a loss by reason of this interpretation. It in fact sustains no loss because the replaced building must be of the same nature and value as that which was destroyed and upon which its security rested. It is merely subjected to one of two ways of discharging the insurer's obligation under the contract. The clause itself states "loss if any." There is no loss in the sense of a right to money damages if in accordance with the terms of the policy the insurer

elects to repair, rebuild, or restore. See *Kuro v. Citizens Fund,* 186 Minn. 225, 242 N. W. 713; *Savarese v. Ohio Farmers Ins. Co.* 260 N. Y. 45, 182 N. E. 665.

In the opinion of the trial court, referred to in the oral argument here but not pressed in the briefs, the question of the sufficiency of the election to rebuild is raised. In the application for insurance, which is attached to and forms a part of the policy, the property is described as follows:

Item 8. "On Barn and Sheds attached, including foundations and fixtures therein or thereon, marked No. 1 on diagram on application. Valuation $4500 Sum Insured $3000."

Item 16. "On shingle roof stave Silo, situated (as shown on diagram on application) as follows: Valuation $500 Sum Insured $100."

Upon the trial the plaintiff Mortell testified:

"The silo was located on the southwest corner of the barn and attached to the barn by a chute used to carry feed to the barn. It was a wooden silo and was part of the barn."

While the insurance upon the silo was $100, the testimony shows that it would cost from $350 to $400 to rebuild it. The defendant by its letter of September 16th elected to rebuild the barn, making no mention of the silo, and the defendant contends here that the recovery on the policy of insurance should be limited to $100 with interest thereon from October 20, 1932. Where items are separately valued, the recovery for any one class or item is limited to the amount of insurance on that class or item (26 Corp. Jur. p. 358, § 458, and cases cited), for the reason that the parties have by their contract determined the amount to be paid on account of the loss. While the clause of the standard policy which gives the insurer the option to rebuild provides that it may take all or any part of the articles agreed upon, which clause relates to personal property, it contains no such provision with respect to repairing, rebuilding, or re-

placing lost or damaged real property. It says, omitting the part inapplicable: "It shall be optional with this company to rebuild the property lost with other of like kind and quality within a reasonable time," etc.

It has been held that where the property covered consisted of iron tanks used for storing petroleum and their contents, the insurer could not elect to restore the contents alone; that the election should be to restore all or no part. *Globe & Rutgers Ins. Co. v. Prairie Oil & Gas Co.* 248 Fed. 452. While the items "barn" and "silo" were separately valued, they constituted together a single instrumentality on the farm. If the defendant wished to exercise its right to rebuild, it should have offered to build the structure in its entirety. The mere fact that items were separately evaluated did not work a severance so far as the construction is concerned. The defendant not being authorized under the terms of the policy at its option to rebuild the property in part, its offer as made was ineffectual to secure to it the option of discharging its obligation by rebuilding. The time within which such election could be made has long since expired. The right of the plaintiffs to recover money damages is therefore complete. It is conceded that there was an error in computing the damages. The interest was reckoned from August 28, 1932. It should have been reckoned from October 19, 1932. The judgment will be modified accordingly, and, as so modified, affirmed.

*By the Court.*—It is so ordered. Respondent to recover its costs.