CAMDEN FIRE INSURANCE ASSOCIATION *v.* REYNOLDS.

4-3705

Opinion delivered February 18, 1935.

*Danaher & Danaher* and *Verne McMillen*, for appellants.

*Robert Bailey*, for appellees.

BUTLER, J. R. E. Reynolds was the owner of a dwelling house insured by the Camden Fire Insurance Association for $2,000, and by the National Liberty Insurance Company of America in the sum of $500 against loss or damage by fire. The National Savings & Loan Association held a mortgage on this property executed by Reynolds, loss made payable to it as its interest might appear.

On May 19, 1933, a fire occurred in the dwelling. Notice of the fire was given, and after an inspection of the property it was the conclusion of the insurance companies that the building had not been totally destroyed within the meaning of the policy. An offer was made Reynolds to pay him and the loan company a certain amount which the insurance companies estimated was the damage to the property. This offer was refused. On or about June 10, 1933, a carpenter was employed by the insurance companies to estimate the damage and to ascertain the amount required to repair and rebuild the house. The carpenter estimated that it could be restored at that time for $1,267.88. The cost of building material having advanced, this carpenter made a second estimate on or about August 11, 1933, which showed the work could have been done at that time for $1,569.56, and he agreed to restore the building in as good a condition as before the fire for that amount. Another contractor agreed to replace the building for $1,631.02. About September 1, 1933, Reynolds began to tear down what was left of the walls and to remove the debris. At this time one of the contractors offered to begin work restoring the building, and Reynolds refused permission for him to do so.

On June 8, 1933, Reynolds, through his attorney, sent proofs of loss to the insurance companies and was advised, on the 30th of that month, that the proofs were not satisfactory in certain respects—notably, that he had failed to inclose plans and specifications, and that this was required in order that the companies might

be able to determine the advisability of replacing or repairing the structure. It appears, however, that the insurance companies had this information, for the carpenters first sent by them to inspect the premises made an estimate of the amount necessary to restore the building on June 10, 1933. However, the plans and specifications were forwarded the companies in compliance with the requests. The date of the letter inclosing these plans was August 5, 1933, but it is contended by the companies that it was not mailed until August 8 and received by them on August 10.

As a result of the disagreement as to the extent of the loss, Reynolds and the loan association filed separate suits against the insurance companies which, by agreement, were consolidated. The trial resulted in a verdict in favor of the plaintiffs for $2,500, whereupon the court rendered judgment in favor of the plaintiffs against the Camden Fire Insurance Company for the sum of $2,000, and against the New Jersey & National Liberty Insurance Company for the sum of $500, adjudging against each of said companies twelve per cent. penalty and attorneys' fees.

On appeal, the appellants contend that the trial court erred in giving certain instructions for the plaintiffs (appellees), and in refusing to give certain instructions requested by them. The principal and real contention for reversal is that the court failed and refused to instruct the jury to return a verdict for the defendants. This instruction was based on the theory that, under the proof, the evidence failed to show a total loss within the meaning of the policies, and that, therefore, the companies were liable only for an amount equal to the cost of restoration which they had offered to pay.

The policies provided that, in the event of loss or damage, the companies might repair, rebuild or replace the property within a reasonable time, on giving notice of its intention to do so, and within thirty days after receipt of proof of loss. This provision is available only where the building has not been totally destroyed, because of our statute (§ 6147, Crawford & Moses' Digest) providing that in case of total loss by fire of the prop-

erty insured the full amount of the policy upon which premiums are charged, collected or received, shall be a liquidated demand.

The trial court's definition of the term "total loss" was as favorable to the appellants, as they could ask, and the jury might have found from the evidence that the loss occasioned to the building in question was "total" within the meaning of the law. *St. Paul F. & M. Ins. Co. v. Green,* 181 Ark. 1096, 29 S. W. (2d) 304; *Firemens' Ins. Co. v. Little,* 189 Ark. 640, 74 S. W. (2d) 777. The evidence on this question is in sharp conflict. Several witnesses, testifying on behalf of the appellants, gave evidence warranting the conclusion that the loss was not total, but only partial, and that the building could have been restored to the same condition it was in when the fire occurred. They testified that the foundation was unimpaired and a portion of the walls standing and usable. Other witnesses who testified for the appellees stated that the foundation was cracked and damaged to such extent that it was unsuitable for the erection of a new building thereon, and that the remaining walls were not reasonably adapted for use in a restored building, because of the extent to which they had been damaged by fire and water. The jury resolved the conflict in favor of the appellees, and its action is binding on us as there is substantial evidence to support the verdict.

Under instruction No. 8, requested by the appellants, the court was asked to tell the jury that the completed proofs of loss were not furnished until August 10, and that, since the companies gave notice within thirty days of their intention to rebuild the house, they had the right to do so. The court properly refused this instruction, because it ignored the question as to whether or not there was a total loss.

Complaint is made of the court's refusal to give to the jury at appellant's request instructions Nos. 3, 4 and 7. Instruction No. 3 was to the effect that if the defendants elected to replace the building and employed a carpenter to do this work who went upon the property for that purpose, and was prevented by Reynolds from doing so, and that Reynolds tore down the entire struc-

ture so that it could not be repaired, he thereby forfeited all right to require the defendants to perform their contracts and could not recover, and that the verdict should be for the defendants. This instruction was properly refused. If, in fact, the parts of the building remaining were not such as would be reasonably adapted to the restoration, and such as would not have been used for such purpose by a reasonably prudent owner, then the action of Reynolds in refusing to allow the repair, and in tearing down the remaining part of the building was within his rights.

Instruction No. 4 was properly refused. This instruction refers to instruction No. 1 given by the court at the instance of appellants, which told the jury that the insurance companies had the right to rebuild or replace the property within the time provided by the policies. If correct, it must be read in connection with other instructions given limiting the right to rebuild or repair to those cases where the loss is not total. Instruction No. 4 ignored the question of total loss, and would have instructed the jury to return a verdict for the defendants against the plaintiff, Reynolds, if he tore down the house so that it could not be repaired.

Instruction No. 7, requested and refused, was to the effect that, if the building was not entirely destroyed by fire, and Reynolds refused to allow the companies to use the materials remaining and tore it down, there could be no recovery by him. If the house was not totally destroyed within the meaning of the law, and the insurance companies elected to restore the same within the time provided by the policies, it would be immaterial what Reynolds did with respect to the portions of the building remaining, for, if he rendered it impossible to restore the buliding the companies would lose nothing, since their damage would be limited to the actual cost of restoration.

We have not overlooked the contention that the court erred in giving instructions C and D on its own motion, to the effect that, if there was not a total loss, appellants would have the right within thirty days after proof of

loss to "repair the building," whereas the policies provided that, within that time, appellants might "give notice of its intention" to make the repairs. This error should have been called to the attention of the court by specific objection. If this had been done, the court would have doubtless made the correction, for it had in other instructions correctly quoted the language of the policies, and told the jury when the loss was not total, and "notice of intention of repairs, etc.," was given within the time provided in the policies, the right to make the repairs existed.

Considering all of the instructions given, the law of the case was given in as favorable aspect to the appellants as they had a right to expect, and we find no prejudicial error.

After the motion for a new trial in this case had been overruled, and while the appeal was pending in this court, the appellants procured a dismissal of that appeal without prejudice, and filed another and additional motion for a new trial in the court below on the ground of newly-discovered evidence. The trial court heard testimony on this motion, and found that this evidence was discovered after the trial which could not have been discovered by the defendants prior thereto; that due diligence had been used in trying to discover this evidence; that it was relevant and material, and not cumulative to the evidence adduced, but not of such character and cogency as might probably change the result if a new trial were granted. This motion was addressed to the sound discretion of the trial judge, and it is only where that discretion is abused that we will review his actions.

A witness, one G. N. Kellogg, testifying at the hearing of the motion, stated that he had burned the house of Reynolds at the request of Mr. Jewell, Reynolds' son-in-law; that the latter, accompanied by Reynolds, showed witness the building to be burned, informed him how the house might be entered and instructed him regarding the location within the building where the fire should be started. The witness stated that the day after the fire, he drove Reynolds to Russellville where payment for

burning the building was discussed, and how the insurance would be collected; that Murl Pugh went with him on the night he burned the house, and remained in the highway nearby until after the house was fired; that he and Pugh left the scene together. Witness also stated that his wife heard some of the conversation had between him and Mr. Jewell before the house was burned relating to the burning of the property.

Both Pugh and Mrs. Kellogg denied the statements made by Kellogg, who, by his admissions on cross-examination, was shown to have been twice sentenced to the penitentiary for larceny, and to have been confined in jail several times for stealing feed stuff and chickens, and for selling whiskey.

It was shown that Wade Jewell, Reynolds' son-in-law, at the last primary election, had been nominated for the office of county judge of Logan County; that the reputation of Reynolds was good and numerous witnesses, among whom were prominent citizens of the county, testified to the general bad reputation of Kellogg for truth and morality.

It is not probable that a jury would have given any weight to the testimony of Kellogg, and the judgment of the trial court to that effect and the overruling of the motion cannot be said to be an abuse of discretion.

The appellants complain of the form of the verdict, and of the action of the court, after the verdict had been returned, in permitting the jury to view the salvage and to return an additional verdict. It is also contended that the judgment rendered by the court is not responsive to the verdict. The record discloses that the jury returned into open court the following verdict: "We, the jurors, give Mr. Reynolds $2,500, and will allow the insurance company to sell and remove the remainings within thirty days. This effect both insurance companies. (Signed) C. L. Gardner, foreman." "At this point, the defendant, National Liberty Insurance Company, through its attorney, Verne McMillan, asked the court to permit the jury to view the salvage which they were permitted to do. After viewing the salvage, the jury returned the following verdict": "We, the jury,

find for the plaintiff against the defendants in the sum of $2,500, and permit the defendants to remove the lumber and other materials taken out of said building within thirty days. We fix the value of such material at no value. (Signed) C. L. Gardner, foreman.''

There was no objection made to the form of the language of the verdict, or as to its uncertainty, or to the recall of the jury, or to the rendering of the second verdict in the case. The cases had been consolidated for the purposes of trial, and the word "plaintiff" in the verdict rendered should be treated as a typographical error. Besides, the appellants are in no attitude to complain as their liability is clearly fixed by the verdict, and it is immaterial how the judgment was distributed since, by it, neither is required to pay more than the sum for which each is liable.

Let the judgment be affirmed.