No. 14,479.

HOME MUTUAL INSURANCE COMPANY *v.* STEWART.

(100 P. [2d] 159)

Decided February 5, 1940.

Mr. LOWELL WHITE, Mr. HOWARD ROEPNACK, Mr. LAW-RENCE R. TEMPLE, Mr. ALBERT P. FISCHER, for plaintiff in error.

Mr. WALDO RIFFENBURG, for defendant in error.

*In Department.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS is an action based upon a contract of insurance, to recover damages to an automobile resulting from an upset. The action was commenced in justice court, where judgment was entered against plaintiff in error, hereinafter designated as defendant, in the sum of $300, in favor of defendant in error, to whom we hereinafter refer as plaintiff. Defendant appealed to the county court, where, on trial to a jury, the result was a judgment in favor of plaintiff in the sum of $277.50 and costs. Defendant sued out a writ of error in this court, seeking a reversal of the judgment. For the purposes of this review, we limit our consideration to the fourth assignment of error, "That the verdict of the jury and the judgment of the court is contrary to the law."

The issues are not controlled by written pleadings. Briefly, the facts are: That plaintiff, holder of a policy of insurance in defendant insurance company, under the terms of which he would be indemnified for repairs to his automobile made necessary by an upset, met with such an accident February 19, 1938, resulting in damage to his car. Within six days thereafter defendant obtained from four concerns bids for making repairs, ranging from $175 to $320; February 25, 1938, defendant offered to repair the auto; negotiations continued between counsel for the respective parties until March 4, 1938, when counsel acting for plaintiff refused to permit defendant to repair the car, because "the lowest proposal will not repair the car satisfactorily." Demand was made upon defendant for $320, the amount of damage claimed, with the statement that if the sum was not paid, or if the car was not repaired by a certain firm designated by plaintiff, suit would be instituted. Negotiations continued, and defendant offered to take the automobile to Denver for repair, which offer was declined by plaintiff. March 8 defendant wrote plaintiff's attorney as follows:

"After our conversation of yesterday, I reported to Mr. Lowell White, for the Company, and he told me this morning from Denver, that the company was ready and willing to repair Mr. Stewart's car and place it in as good order and condition as it was prior to his recent accident.

"The company has elected, as provided by the policy, to proceed in this manner rather than paying Mr. Stewart the amount of his damage.

"Please advise me at once of Mr. Stewart's intentions, so that there will be no delay in repairing the car."

The auto was in possession of plaintiff, who made no reply, and March 15, 1938, commenced this action. The applicable portion of the provisions of the policy here involved, under the heading "Insuring Agreements," is as follows:

"Coverage D-2 — Convertible Collision or Upset. To pay for loss consisting of damage to the automobile or its equipment, caused by accidental collision or by upset."

Under the heading "Conditions":

"11. Limit of Liability—Coverages D-1, D-2, E, F, and G—The Company's limit of liability with respect to the automobile or its equipment shall be the actual cash value of the property damaged, destroyed or stolen, at the time such loss occurs, or the cost of its suitable repair or replacement not in excess of such value, and loss shall be ascertained or estimated accordingly with proper deduction for depreciation however caused and without compensation for loss of use, and shall in no event exceed the limit of liability, if any, stated in Item 3 of the Declarations."

"18. * * * The Company may, at its option, either repair or replace any part or all of the insured property upon which loss is claimed or pay to the Insured in money the full amount of such loss as determined in accordance with the provisions of this Policy, subject, however, to such deduction, if any, as may be applicable thereto."

Nothing had been done to the damaged car at the time the suit was commenced, and thereafter plaintiff had the repairs made by a concern of his selection, at a cost of $320.

Defendant predicates its defense on condition 18, supra. It contends that the letter of March 8, 1938, was an unqualified election thereunder. We think this contention is sound. When defendant exercised its option to repair the automobile, in which plaintiff, under the terms of the policy, had no choice but to acquiesce, the original contract of the parties was converted into a new one, under which the insurer was to repair the car and restore it to its former condition. Simpson's Law Relating to Automobile Insurance (2d ed.), p. 100, §102; *Letendre v. Automobile Insurance Co.* (1921) 43 R. I.

410, 112 Atl. 782; *Gaffey v. St. Paul Fire & Marine Insurance Co.* (1917) 221 N. Y. 113; *Sare v. United States Fidelity & Guaranty Co.* (1919) 50 Dom. L. R. 573; *Wynkoop v. Niagara Fire Ins. Co.*, 91 N. Y. 478, 481, 482; *Cussler v. Firemen's Ins. Co. of Newark, N. J.*, 194 Minn. 325, 260 N. W. 353, 355.

■■ After election and repairs by the insurer the insured would have his remedies under the new agreement, based on the failure of insurer to properly repair the automobile in accordance with the terms of the policy, or for damages caused by an unreasonable delay in making the repairs. Plaintiff does not controvert these legal statements, but argues that an election, to be effective, must be explicit in the following particulars: 1. It must be made within a reasonable time after the damage or loss has occurred to the insured. 2. It must be clear, positive, distinct and unambiguous. 3. The repairs or replacements must be made within a reasonable time. 4. It cannot be coupled with an offer of compromise or be made for the purpose of forcing a compromise, but it must be an election made with no . alternative. 5. When the election is made, the repair or replacement must be suitable and adequate.

Was the election made within a reasonable time? Within six days after the accident, as previously stated, defendant obtained bids and immediately expressed its desire to have the car repaired at a garage which was unacceptable to plaintiff. Thereafter defendant attempted to obtain possession of the car in order to have it repaired in Denver, but possession was refused by plaintiff. The following day defendant elected to repair under the policy, which provided that in no event should the loss become payable until forty days after ascertainment thereof. Only nineteen days had expired from the date of the accident to the date of election. Under these circumstances, the election was made within a reasonable time.

The letter of election hereinabove quoted meets the tests of being clear, positive, distinct and unambiguous; but plaintiff argues that since in the last paragraph defendant requested that it be advised as to his intention, there was no compliance with the requirements. It must be remembered that the automobile was in plaintiff's possession. Until he consented to turn it over to defendant for repairs, none could be made. The letter itself states that the reason why defendant desired to be advised as to plaintiff's intentions was "so that there will be no delay in repairing the car." This paragraph, under the circumstances, did not modify the unambiguous statement of election. That the repairs and replacements were not made within a reasonable time was due solely to the action of plaintiff. The letter of election contained no offer of compromise whatsoever, and there was no statement in the alternative. It is true that when an election is made, repairs or replacements must be suitable and adequate, but on this phase of the case there could be no issue until after repairs were made, and there were no repairs by defendant. Its offer of election states clearly a willingness to repair the car "and place it in as good order and condition as it was prior to his recent accident." The contention of plaintiff that the attempted election was insufficient because it did not meet the five enumerated tests is without merit. The record discloses that the election was made as provided by the policy. In entering a judgment for the sum expended by plaintiff for repairs the trial court committed reversible error.

■■ Defendant contends that in view of its election to make the repairs, and plaintiff's refusal, this action must be dismissed. There are some authorities which sustain that contention. True, it was plaintiff's obligation to recognize the election and place the automobile in the possession of defendant for repairs, and his failure to do so breached the contract. The primary purpose of the contract of insurance, however, is stated

in Coverage D-2, supra, of the policy. The premium was paid by plaintiff for the purpose of securing a contract which would indemnify him for such a loss, if and when it occurred. Condition 18 of the policy is a secondary provision and relates to the method of paying the loss. That a loss occurred is not disputed. The election made by defendant was tantamount to an offer to pay the loss in compliance with the terms of its contract by repairing plaintiff's car, which it asserted it could do at a cost of $175. This is not a case in which defendant insurer had no opportunity and was prevented from making an estimate of the loss incurred under the policy. Here we have at least an implied admission of the liability of $175. A holding under these circumstances—no repair whatever being made by the defendant—that plaintiff should be penalized by a refusal to grant him any reparation under the policy, for which he paid a premium, would not meet with our conception of justice. The ultimate purpose of the enforcement of all law is justice, and we endorse the holding and approve the language of the Supreme Court of Oklahoma in *Gage v. Connecticut Fire Insurance Co.*, 34 Okla. 744 (127 Pac. 407), where, in a somewhat similar case, Mr. Commissioner Ames, speaking for the court, says: "To hold that the mere election to rebuild, when nothing has been done toward rebuilding, would defeat an action on the policy would be substituting form for substance and make the law ridiculous."

Under the circumstances here, plaintiff is entitled to recover damages in such amount as defendant company admits it would have cost to place the automobile in as good order and condition as it was prior to the accident, which, based upon the lowest bid by it obtained in good faith, was $175.00. Plaintiff's refusal to recognize the election and permit defendant to repair, in our opinion, justly limits his recovery to that sum.

The judgment is reversed and the case remanded, with directions to enter judgment in favor of plaintiff and

against defendant in the sum of $175, less $22.50, as provided by the "convertible" clause in the policy, all costs to be assessed against plaintiff.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK concur.