Gussie WILLIAMS, Plaintiff-Respondent,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY OF MISSOURI, Defendant-Appellant.

No. 7509.

Springfield Court of Appeals.

Missouri.

Feb. 23, 1957.

C. A. Powell, Dexter, for defendant-appellant.

Briney & Welborn, Bloomfield, for plaintiff-respondent.

STONE, Judge.

Defendant, Farm Bureau Mutual Insurance Company of Missouri, issued to plaintiff, Gussie Williams of Charleston, Missouri, a policy of insurance providing so-called $25 deductible collision coverage on plaintiff's 1953 DeSoto sedan, which said policy admittedly was in effect on January 27, 1955, when the DeSoto was damaged by "upset." In this jury-tried suit "for damages on said policy," defendant appeals from an adverse judgment of $1,000.

Following the accident, plaintiff obtained and submitted to defendant two repair estimates, one of $1,074 by the then DeSoto-Plymouth dealer at Cairo, Illinois, and the other of $1,195.41 by the then Chrysler-Plymouth dealer at Cape Girardeau, Missouri. Having obtained a firm bid of $526.85 from Dace Paint & Trim Co. of Sikeston, Missouri, defendant exercised its policy option to repair the insured automobile rather than to pay the loss in money; but, objecting to Dace, plaintiff refused to deliver her automobile to defendant for repairs by him. During February, 1955, plaintiff traded in her damaged DeSoto on a new automobile purchased from the then DeSoto-Plymouth dealer at Bloomfield, Missouri. This action was instituted shortly thereafter.

The policy in suit stated, among other things, that "the limit of the company's (defendant's) liability for loss shall not exceed the actual cash value of the automobile, or, if the loss is of a part thereof, the actual cash value of such part at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation" and further provided that "the company may at its option pay for the loss in money or may repair or replace the automobile or such parts thereof as aforesaid." No issue was raised as to the time at which, or as to the manner in which, defendant exercised its policy option to repair the insured automobile; and, with customary and commendable frankness, plaintiff's counsel here concede that affirmance of the judgment nisi depends solely upon their contention that, by tendering $562.67 ($501.85 as the amount of Dace's firm bid less plaintiff's $25 retention, $40 for towing and storage, $13.72 for interest to the date of tender, and $7.10 for court costs accrued to date) in its answer, defendant abandoned its option to repair and admitted "its liability under the policy in accordance with the petition," subject only to determination by the jury of "the reasonable amount of the repair."

When not invalidated by statute,[1] provisions such as those quoted from the policy in suit clearly are enforceable according to their terms.[2] Where, as in the

---

1. Since defendant is a mutual insurance company doing business under Sections 379.205 to 379.310, incl., the quoted provisions of the policy in suit are not in conflict with Section 379.150 which, with respect to a loss within the operation of that statute, grants to the *insured* an option to require either repair of the damage or payment in money. See Section 379.310. (All statutory references herein are to RSMo 1949, V.A.M.S.) Contrast Non-Royalty Shoe Co. v. Phoenix Assur. Co., Ltd., 277 Mo. 399, 417–419, 210 S.W. 37, 41.

2. Boecker v. Aetna Casualty & Surety Co., Mo.App., 281 S.W.2d 561, 565(9); Watkins v. Motors Insurance Corp., Mo. App., 271 S.W.2d 584, 587; Barton v. Farmers Ins. Exchange, Mo.App., 255 S.W.2d 451, 455. Consult also Smith v. Farm Bureau, etc., Ins. Co. of Concord, 98 N.H. 420, 101 A.2d 778, 780(1); Lincoln v. General Casualty Co. of Wisconsin, 243 Iowa 1280, 55 N.W.2d 321, 323; Haussler v. Indemnity Co. of America, 227 Ill.App. 504; Home Ins. Co. of New York v. Tumlin, 241 Ala. 356, 2 So. 2d 435, 437(3, 4); 46 C.J.S., Insurance, § 1195a, p. 129; Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.), Vol. 6, Sec. 3791, p. 466.

instant case, there has been a *timely* and *unequivocal* exercise of the insurer's option to repair, the insured has no choice but to acquiesce,[3] and the original contract of insurance is converted into a contract to repair,[4] under which the insurer becomes obligated so to restore the damaged automobile that, when returned to the insured, its function, appearance and value are substantially the same as they were immediately prior to the accident.[5]

We need not here speculate as to whether circumstances might arise which would justify an insured in refusing to honor an insurer's timely and unequivocal exercise of its option to repair. It will suffice to say that indubitably no such circumstances are disclosed in the instant case. With respect to Dace (to whom defendant proposed to deliver the insured automobile for repair), plaintiff's only comment, coming to us naked, bald, unadorned and unexplained, was that she "objected to him." From the record as a whole, our impression is that plaintiff's *present* complaint is that Dace intended to *repair* certain damaged parts rather than *replace* them with new parts; but, in the absence of any evidence indicat-

ing that, *when plaintiff refused to honor defendant's exercise of its option to repair,* she had any knowledge as to whether Dace proposed to repair all or any of the damaged parts, obviously his intention (whatever it may have been) could have afforded no legal justification for plaintiff's arbitrary and unyielding conduct in this case.

Furthermore, defendant's policy obligation was "to *repair or replace* the automobile or such part thereof with other of like kind and quality, with deduction for depreciation," *not* to *replace* every damaged part with a new part [cf. Watkins v. Motors Insurance Corp., Mo.App., 271 S.W.2d 584, 587(3)] as was contemplated by the repair estimates of plaintiff's witnesses, none of whom, however, said that such *replacement* was necessary to substantial restoration of the function, appearance and value of the damaged automobile. And whether, if given an opportunity to do so, defendant would have so repaired the insured automobile as to have satisfied the exacting obligation assumed by it under the converted or substituted contract to repair, i. e., substantial restoration as to function, appearance and value, is a question which plaintiff's unex-

3. Home Mut. Ins. Co. of Iowa v. Stewart, 105 Colo. 516, 100 P.2d 159, 160(1); Sentinel Fire Ins. Co. v. Anderson, Tex. Civ.App., 196 S.W.2d 649, 652; Letendre v. Automobile Ins. Co. of Hartford, Conn., 43 R.I. 410, 112 A. 783, 784; Blashfield's Cyclopedia, Vol. 6, Sec. 3819, loc. cit. 500.

4. Pierce v. American Fidelity Fire Ins. Co., 240 N.C. 567, 83 S.E.2d 493, 496 (4); Dosland v. Preferred Risk Mut. Ins. Co., 242 Iowa 1220, 49 N.W.2d 823, 827, 29 A.L.R.2d 712; Gaffey v. St. Paul Fire & Marine Ins. Co., 221 N.Y. 113, 116 N.E. 778, 779; Blashfield's Cyclopedia, Vol. 6, Sec. 3819, loc. cit. 500. See also Cussler v. Firemen's Ins. Co. of Newark, N. J., 194 Minn. 325, 260 N.W. 353, 355 (1); Cocklin v. Home Mut. Ins. Ass'n of Iowa, 207 Iowa 4, 222 N.W. 368; Wynkoop v. Niagara Fire Ins. Co., 91 N.Y. 478, 482; 29 Am.Jur., Insurance, Sec. 1268, p. 945.

5. In Barton v. Farmers Ins. Exchange, supra, 255 S.W.2d loc. cit. 457, the insurer's obligation was stated as being "to put the automobile in as good a condition both in appearance and mechanically as it was prior to the upset"; but, as many authorities point out, it could not well be said that there had been substantial restoration of a damaged automobile if, after repairs, its reasonable market value was substantially less than immediately prior to the accident. For an excellent discussion of this subject, see Potomac Ins. Co. v. Wilkinson, 213 Miss. 520, 57 So.2d 158, 160, 43 A.L.R.2d 321. Consult also American Standard County Mut. Ins. Co. v. Barbee, Tex.Civ.App., 262 S.W. 2d 122, 123(1); Dunmire Motor Co. v. Oregon Mut. Fire Ins. Co., 166 Or. 690, 114 P.2d 1005, 1009(7); Motors Ins. Corp. v. Smith, 218 Miss. 268, 67 So.2d 294; Stoops v. First American Fire Ins. Co., 160 Tenn. 239, 22 S.W.2d 1038, 1040; Commercial Credit Corp. v. Monroe, 38 Tenn.App. 596, 277 S.W.2d 423, 426; Interstate Insurance Co. v. Logan, 205 Md. 583, 109 A.2d 904, 906(1); Blashfield's Cyclopedia, Vol. 6, Sec. 3791, loc. cit. 467; 46 C.J.S., Insurance, § 1195d(2), loc. cit. 133.

plained conduct irrevocably consigned to the impenetrable and forbidden realm of speculation, conjecture and fancy. *If* defendant, permitted to undertake repairs, had fallen short of substantial restoration of function, appearance and value, plaintiff would not have been bereft of right or remedy but, upon proper showing, might have recovered damages in an amount equal to the difference between the reasonable market value of the insured automobile immediately prior to the upset and its reasonable market value when tendered to plaintiff after repairs.[6] However, plaintiff having foreclosed repair by defendant, no such issue is or could be presented in the case at bar. Home Mut. Ins. Co. of Iowa v. Stewart, 105 Colo. 516, 100 P.2d 159, 161; Sentinel Fire Ins. Co. v. Anderson, Tex. Civ.App., 196 S.W.2d 649, 652.

■ There is a paucity, as well as a conflict [see 46 C.J.S., Insurance, § 1195d (2), loc. cit. 134], of authority as to whether an insurer is relieved of all liability by an insured's unwarranted refusal to honor the insurer's valid exercise of its option to repair. That, in such event, the insurer has no subsequent liability is a conclusion which might be supported by sound reasoning and cold logic [see Beals v. Home Ins. Co., 36 N.Y. 522, and the *dictum* in Rieger v. Mechanics' Ins. Co. of Philadelphia, 69 Mo.App. 674, 682], but which would neither comport with our conception of substantial justice nor be consonant with the primary purpose of all insurance coverage, i. e., indemnification against loss. Accordingly, we prefer to accept and follow those holdings to the effect that an insured's unwarranted refusal to honor an insurer's valid exercise of its policy option to repair limits the

insured's subsequent recovery to the lowest firm repair bid obtained in good faith, with appropriate adjustment, of course, for the insured's retention (if any) under the policy in suit, towing and storage charges for which the insurer may be responsible, and interest to the date of tender. Home Mut. Ins. Co. of Iowa v. Stewart, supra, 100 P.2d loc. cit. 161–162(4). See also Camden Fire Ins. Ass'n of Camden, N. J. v. Reynolds, 190 Ark. 390, 79 S.W.2d 54, 56–57(5); Cussler v. Firemen's Ins. Co. of Newark, N. J., 194 Minn. 325, 260 N.W. 353, 356.

■ What was the effect of defendant's tender in the instant case, upon which plaintiff relies for affirmance of her judgment? Of course, a tender by defendant constitutes an irrebuttable admission that, regardless of the outcome of the action, defendant was indebted to plaintiff at the time of institution of suit, *to the extent of the tender*.[7] However, as we have said recently, the effect of a tender is, *generally stated, "only to stop the running of interest and give the defendant the costs."* Willis v. American National Life Ins. Co., Mo.App., 287 S.W.2d 98, 106, and cases cited in footnote 16. See Section 514.250. True it is that, in some cases, a tender may operate "as a solemn and conclusive admission of plaintiff's cause of action, and of the existence of every fact essential to maintain his action," as was stated in Wells v. Missouri-Edison Electric Co., 108 Mo.App. 607, 84 S.W. 204, 206, an action sounding in tort where it would have been "a gross inconsistency, *particularly under the precise language employed by defendant in its answer*, if, after such tender and payment, the merits of the case were still open to con-

---

6. Barton v. Farmers Ins. Exchange, supra, 255 S.W.2d loc. cit. 456(3). See also American Standard County Mut. Ins. Co. v. Barbee, supra, 262 S.W.2d loc. cit. 124(2); Stuyvesant Ins. Co. v. Driskill, Tex.Civ.App., 244 S.W.2d 291, 293(5); Potomac Ins. Co. v. Wilkinson, supra, 57 So.2d loc. cit. 160(4); Cocklin v. Home Mut. Ins. Ass'n of Iowa, supra, 222 N.W. loc. cit. 369(2).

7. 52 Am.Jur., Tender, Sec. 37, p. 242; Scofield v. American Mut. Ins. Co., 227 Mo.App. 166, 52 S.W.2d 205, 207(6); Knight v. Firemen's Ins. Co. of Newark, N. J., 227 Mo.App. 426, 49 S.W.2d 682, 687(11). See also Summers v. Peoples Elevator Co., Mo.App., 136 S.W.2d 81, 84 (9); King v. Mutual Life Ins. Co. of Baltimore, Mo.App., 89 S.W.2d 145, 147(2).

test at the trial." (Emphasis ours) But, in this action ex contractu, defendant's answer clearly alleged and plainly relied upon plaintiff's refusal to honor defendant's valid exercise of its option to repair. Nothing in the answer, or throughout the course of the trial, indicated any intention on the part of defendant to abandon or renounce its exercised option to repair, or afforded any reasonable basis for a belief on the part of plaintiff that there had been any such abandonment. In fact, as we understand the present position of plaintiff's counsel, it is *not* that they have been misled or deceived, at any stage of the proceeding, as to defendant's intended reliance upon its policy option to repair, but rather is that, as a matter of law, the legal effect of defendant's tender necessarily was an admission of "its liability under the policy in accordance with the petition."

 We cannot agree that defendant's tender had any such effect. On her own evidence, plaintiff had no right to recover on her pleaded theory, i. e., that she had "duly fulfilled all of the conditions of said policy on her part" but that defendant, "without just cause and excuse, refused and failed to pay the plaintiff according to the terms of said policy." Compare Western Advertising Co. v. Midwest Laundries, Inc., Mo.App., 61 S.W.2d 251, 253. Defendant's tender, in an amount not challenged by plaintiff and just sufficient to cover defendant's limited but continuing liability [i. e., for the amount of the lowest firm repair bid obtained in good faith, with appropriate adjustment for plaintiff's $25 retention, towing and storage bills, interest and costs to the date of tender], obviously was designed and intended to stop the accrual of interest and costs. Section 514.250. And, we think that, fairly and reasonably considered, the effect of such tender was simply that, and nothing more. Home Ins. Co. v. Harrison, 48 Ga.App. 705, 173 S.E. 198(2). Otherwise, defendant would be penalized for plaintiff's unwarranted refusal to honor defendant's valid exercise of its

contractual option to repair. This, we should not and will not do. Compare Outcault Advertising Co. v. Stock Growers' State Bank, Mo.App., 242 S.W. 116, 118(5); Taylor v. Atlas Security Co., 213 Mo.App. 282, 249 S.W. 746, 748(2); Duffy v. Barnhart Store Co., Mo.App., 202 S.W.2d 520, 525(4); Johnson v. Fire Ass'n of Philadelphia, 240 Mo.App. 1187, 225 S.W.2d 370, 373(7).

The judgment for plaintiff in the sum of $1,000 is set aside and the cause is remanded with directions to enter judgment for plaintiff in the sum of $562.67, the amount of defendant's tender, with all costs accruing to the date of tender to be taxed against defendant and all costs accruing thereafter to be taxed against plaintiff.

McDOWELL, P. J., and RUARK, J., concur.