L. A. COCKLIN, Appellee, v. HOME MUTUAL INSURANCE ASSOCIATION OF IOWA, Appellant.

DECEMBER 14, 1928.

*Swan, Martin & Martin, C. C. Putnam,* and *Paul H. Williams,* for appellant.

*Dalton & Knop* and *John J. Hess,* for appellee.

ALBERT, J.—Plaintiff was the holder of an insurance policy issued by the defendant in the sum of $6,000, covering a dwelling house in the city of Griswold. The house was destroyed by fire on August 8, 1925. After notice, the company elected to take advantage of one of the terms of the policy, and undertook to repair and rebuild said dwelling, which work was commenced in November, 1925, the house being turned over to the plaintiff about the 23d of December following. The claim of the plaintiff is that the repair work done by the employees of the defendant was not done in a workmanlike manner, and that the house as rebuilt was not in as good condition as it was before the fire; that he objected on several occasions during the progress of this work.

The jury could have found, under the evidence, that the

plastering was cracked and falling off, was loose from the wall, and that the house was not fit for occupancy; that certain partitions were not such as to accommodate the soil pipes to the bathroom.above, whereas the original partitions were so constructed as to allow the soil pipes to go through the partition; that the floor sagged and dished, and the chimney was cracked and in an unsafe condition; that many doors and screens were not put in place; and that the building, when alleged to be completed, was not in such condition as could be repaired, or the defective workmanship remedied. There is further testimony that the only way plaintiff could get what he had before the fire was to tear down and rebuild the house in a workmanlike manner; that the building was worth from $6,000 to $6,800 before the fire, and after it had been repaired, it was worth only from $500 to $800. This house had been constructed into a double apartment, prior to the fire, and the reasonable rental value of each apartment was $30 to $32.50 a month. This is a sufficient statement of the facts at this point for an understanding of the errors of which complaint is made.

Under this identical situation, in the case of *Zalesky v. Iowa State Ins. Co.*, 102 Iowa 512, 518, this court said:

"At the time the appellant elected to rebuild, and gave proper notice thereof to the assured, it converted the policy into a building contract."

Hence this case should be considered the same as though the contract between the insurance company and the plaintiff were a contract to repair and rebuild this property. Under these circumstances, it was the duty of the defendant to repair said property so that it would be in substantially as good a condition as it was prior to the fire. *Littell v. Webster County*, 152 Iowa 206; *Anderson v. Miller*, 96 Tenn. 35 (31 L. R. A. 604); 3 Elliott on Contracts, Section 2120.

The first question seriously discussed is an attack on the instruction as to the proper measure of damages; and second, the question of whether or not the plaintiff was entitled to rental.

The court instructed the jury, in substance, that, if the defendant failed to restore this dwelling to substantially the same condition it was before the fire, and if, after the alleged repairs

were completed, defects existed therein for which the defendant was responsible, and if said defects were so intimately. connected with the body· of the structure, or so inherent .in some permanent part of the dwelling, that they could not be remedied or corrected at a reasonable expense, or without tearing down or rebuilding the house or some .material part thereof, the proper measure· of the damages due the plaintiff would be the difference in value of said dwelling house as·it existed before the fire and its value at the time the same was offered to the plaintiff and defendant ceased to perform labor thereon. The instruction then continues with the converse of this proposition, that, if the de-fects existing for which the defendant is responsible are such that they could be remedied or corrected at a reasonable expense, and without tearing down or rebuilding said dwelling, or a sub-stantial part thereof, then their verdict should be for the de-fendant. The instruction further continues:

"In other words, for the plaintiff to recover herein, he must establish by the evidence that the defects now existing in said dwelling house were caused by the defendant, and that they are permanent, and cannot be corrected at a reasonable expense, or without tearing down and rebuilding said dwelling house or a substantial part thereof."

Upon the plaintiff's theory of this case, his claim was that the house, at the time it was tendered to him after being re-paired by the defendant, was not substantially as good as it was before the fire, and that, by reason of the many defects in the construction, the only way it could be placed in the condition it should be, under the law, was to tear it down and rebuild it. The contention· of the defendant, of course, was that·the house was in substantially as good condition when completed as it was before the fire. Under the instruction given, if the jury should have found that the plaintiff's contention was true, then the measure of damages given by the court was correct: that is to say, they should compare the value of the ·house immediately before the fire with the value as they found it to be at the time it was turned over to the plaintiff, and the difference between these values would be the proper measure of damages. In other words, the whole theory of damages is built upon the basic

thought of compensation; and if the jury followed this rule for measure of damages, and allowed the difference between the value before the fire and the value as the house stood when it was turned over to the plaintiff, this the law would consider full compensation to the plaintiff. *Watson v. Mississippi River Power Co.*, 174 Iowa 23; *Bremhorst v. Phillips Coal Co.*, 202 Iowa 1251, 1256; *Walters v. Iowa Elec. Co.*, 203 Iowa 471; *Graves v. Allert & Fuess*, 104 Tex. 614 (39 L. R. A. [N. S.] 591) ; 9 Corpus Juris 810, Section 149, and Note 19; 17 Corpus Juris 885; 3 Sutherland on Damages (3d Ed.), Section 699. So far, we think, this rule of damages was accurate.

But in the following instruction, the court, in substance, told the jury that if, after applying the measure of damages above indicated, they found the plaintiff was entitled to recover, they would be justified in allowing him, as damages, rentals for a period not to exceed ten months, and for a greater sum than $1,500. This, we think, was error. When the plaintiff received full compensation under the above rule for measuring damages, he must be satisfied therewith. There is no contention in the case that the defendant used a longer time in the making of these repairs than was reasonably necessary, and we can see no occasion for giving the jury the right to assess, in addition to the compensatory damages, any amount as rental. If the claim of the plaintiff were that he was seeking damages in an amount necessary to put the property in the condition in which it should have been placed by the defendant after the defendant had completed the job and tendered it to him,—which, of course, would take some length of time after the property was turned over to him,—then, under such circumstances, we can see a reason for allowing rental; but the plaintiff is not trying his case on this theory. He insists in this court that the measure of damages given was the proper one, and having accepted that as a proper measure of damages, he must abide the results.

The plaintiff argues that, even though these instructions were erroneous, the jury allowed him nothing for rent, because of the fact that, under the testimony, the amount given him by  the jury was not nearly enough to cover the actual damages, and therefore nothing was allowed for rent. The jury returned a verdict for $2,125, and we have no means of knowing

whether or not that included rent. It is possible that the jury did not estimate the actual damages of the plaintiff as highly as the plaintiff thinks they should have been, and may have allowed him something by way of rent for the property. Having no means of determining this matter, we cannot say that the instruction was nonprejudicial.

Some question is raised as to the admissibility of testimony of a witness by the name of Reynolds, tendered by the defendant, who occupied this property as a tenant, and vacated on the 11th day of July, 1925. It was sought to prove by  this witness that the floors in the house at the time he vacated were very uneven, and in a bad condition. The plaintiff took possession of the property after Reynolds moved out, and the fire occurred on the 8th of August following. Although plaintiff claims that they leveled these floors before the time the fire occurred, the court excluded this testimony, on the ground that it was too remote. In this we think the court erred. It should have been admitted.

The defendant further tendered a witness by the name of Phil Crogan, who, it was claimed, helped the plaintiff in attempting to level the floors some four or six weeks before the fire. He testified that the floors were very much out of level, and that the plaintiff said at that time that the defects would not be noticed, by the use of carpets, and that the stairway would cover part of the defects. This testimony was rejected, and, we think, should have been admitted.

Some other minor objections are raised, but on a retrial of the case they are not likely to arise, and we give them no further consideration.

For the errors pointed out, the case is reversed.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.