JAMES P. HANSEN, appellee, v. ERNEST ANDERSEN, appellant.

No. 48717.

(Reported in 71 N.W.2d 921)

SEPTEMBER 20, 1955.

Boyle & Schuler, of Clear Lake, for appellant.

Breese & Cornwell, of Mason City, for appellee.

WENNERSTRUM, J.—Plaintiff's action is for damages claimed to have resulted because the defendant, a building contractor, failed to construct a granary in accordance with the original plans and specifications, as claimed to have been agreed upon by the parties. Upon submission to a jury of the several issues involved a verdict was returned for the plaintiff. The defendant filed a motion for judgment notwithstanding verdict and, in the alternative, a motion for new trial. Honorable M. H. Kepler, the trial judge, became ill shortly thereafter and subsequently died. He did not rule on the motions. At a later date these respective motions were submitted to the Honorable William P. Butler, one of the judges of the Twelfth Judicial District. Rule 367, R. C. P. He overruled the motions as presented. From the judgment and the ruling on the several motions the defendant has appealed.

The plaintiff owns and operates a 280-acre farm in Cerro Gordo County, Iowa. During March of 1951 he conferred with the defendant relative to the building of a granary. Plaintiff contemplated the construction of a building similar to plans furnished by a company which makes and sells elevators for installation in such buildings. He, however, informed the defendant he desired to have the building built 8 feet longer than was contemplated in the plans and 2 feet wider. The proposed building as then contemplated would be 40 feet long and 29 feet wide, with a 13-foot driveway instead of an 11-foot driveway, as provided for by the original plans. Prior to the commencement of the work the plaintiff and the defendant dis-

cussed the effect of the extra two feet in the width of the building and the matter of compensating for the increased width in connection with the general plans for it. The structure was completed late in July 1951. Although there was some complaint to the defendant about matters other than those which were the basis of the suit, the plaintiff paid the defendant for his services and those of his employees on November 8, 1951. At that time the plaintiff made no comment relative to the manner in which the building had been constructed, the length of the rafters, and the place and elevation of the chutes.

During November 1951 the plaintiff began the hauling of the crop of corn for that year to the bins. Trouble developed, however, in getting the corn to slide down the chutes and in particular to the bins at the end of the building. At that time it was observed by the plaintiff the cribs did not appear to hold as many bushels of corn as was contemplated. Later the plaintiff measured the attic height and it was discovered there were only 6 feet of attic space while the plans called for 7 feet of such space. This 7-foot height was necessary for the chutes to function properly. It was also observed the lower rafters of the hip roof were 12 feet 7 inches in length while the plans called for rafters 14 feet in length. This shortening of the rafter length resulted in a loss of bin capacity of 800 bushels of corn and a loss of 300 bushels in the cribs or a total loss of capacity in the building of 1100 bushels of corn.

There is some evidence that before the rafters were erected, the length of which is complained of, the plaintiff and the defendant and a foreman for the defendant discussed the pitch of the roof and the necessary length of the rafters. There was some experimentation on the ground relative to the proposed pitch of the roof and the necessary length of the rafters. The defendant maintains that at no time did the plaintiff complain to him of any defects in the construction and the first he knew of any objections was when he received a letter from the plaintiff's attorney.

The plaintiff claims as a basis for his action in damages (1) the completed building had a 6-foot attic instead of a 7-foot attic as provided for in the plans and specifications; (2) unnecessary lumber was put into the building by the defendant;

(3) the shortening of the length of the lower rafters of the hip roof from 14 feet to 12 feet 7 inches and the upper rafters from 10 feet to 9 feet 9 inches resulted in the capacity of the cribs being lessened by 1100 bushels. The defendant asserted as a defense (1) a denial of a failure to build in accordance with the contract, and (2) plaintiff is estopped from prosecuting this action inasmuch as he observed the manner in which the crib was being constructed and approved the same and thereafter paid for the work done by the defendant.

It is the claim of the defendant that the trial court should have directed a verdict in his favor at the close of all the evidence in that (1) the plaintiff had failed to prove the proper measure of damages; (2) he had failed to show a definite contract between the plaintiff and the defendant; (3) the plaintiff had waived any breach by approving the manner of construction of the building and thereafter, with knowledge of the claimed defects, had paid the defendant; (4) the testimony on behalf of the plaintiff was inconsistent with the physical facts and is not entitled to be relied upon.

The trial court submitted three items of damage to the jury. They were: (1) The use of an excessive amount of lumber at a cost of $65.25; (2) lowering the attic of the building in order to make it 7 feet at a cost of $216.35; (3) the proposed rebuilding of roof in a manner so as to comply with the plans and specifications at a cost of $1805.

Involved in a consideration of the trial court's claimed errors was the admission of the testimony of a different contractor, who, over the objections that the witness' answers would be immaterial and would not show a proper measure of damages, gave an estimate of the cost of changing the corncrib by raising the lower rafters and making them longer, thereby increasing the capacity.

Damages were also sought to be proved in the amount of $216.35 by the testimony of William Walker who stated he cut 12 inches off the bin tops so as to make the space in the attic 7 feet instead of 6 feet. Damages in the amount of $65.25 for the use of excessive and unnecessary lumber were shown by the testimony of the plaintiff.

It is shown by the evidence the defendant was to be compensated for his work on a cost plus basis of 10% and his actual compensation as so computed was $683.52. It should be here noted that the plaintiff has not, according to the evidence, made any of the changes he claims are necessary in connection with the rebuilding of the roof and is continuing to use the building as constructed.

I. The trial court, in the submission of the case to the jury, necessarily held there was a building contract for which the defendant could be held liable other than as originally contemplated. If it can be considered there was such a contract and the case was properly submitted to the jury the question arises whether the trial court committed error in receiving evidence bearing on the cost of making the necessary changes to comply with the claimed contract. It is contended the plaintiff did not submit testimony bearing on the proper measure of damages. It is also maintained the court committed error in giving the instruction it did relative to the measure of damages. These claimed errors involve the submitted item of damage of $1805. Consequently we must consider the applicable rule in determining what is, under the facts in this case, the proper measure of damages.

In 9 Am. Jur., Building and Construction Contracts, section 152, page 89, the rules, under varying circumstances, are set forth as follows: "The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken posses-

sion, the latter is not permitted to recover the cost of making the change, but may recover the difference in value."

And also in 9 Am. Jur., Building and Construction Contracts, section 43, page 33, the proper measure of damages in connection with construction contracts is commented on in a somewhat different form, as follows: "The true measure of recovery is the sum stipulated in the agreement less the damages sustained by the failure strictly to perform. For instance, where the defects are remediable without taking down and reconstructing any substantial portion of the building, the amount of deduction from the contract price to which the owner is entitled is the expense of making the work conform to contract requirements. However, where the defective material has-become an inherent part of the building so that the defect cannot be remedied except by taking down and doing over some substantial portion of the work, involving such an expenditure that the contractor would be deprived of adequate compensation, the amount allowable to the owner is the amount which the building, by reason of the defect, is worth less than it would have been if constructed in entire conformity to the contract."

█ The general rule relative to the proper measure of damages in connection with a breach of a construction contract is further summarized by the annotator in 123 A. L. R., at page 533, as follows: "The loss in property value resulting from the breach of a building or construction contract, or other contract to change the condition of real property, rather than the cost of correction or completion, is the proper measure of damages recoverable by the owner where the correcting of defects would necessitate unreasonable destruction of work, or where, according to one view, the strict completion of performance would, without destruction of work, involve expense greatly disproportionate to the importance of results obtainable."

Cases dealing with situations where a substantial portion of construction work must be rebuilt and the value rule is applied are annotated in 23 A. L. R. 1438 to 1441; 38 A. L. R. 1384; 65 A. L. R. 1299; 123 A. L. R. 533 to 536.

█ The evidence convincingly shows there would have to be substantial changes to comply with the claimed contract. These changes as shown by the evidence would include the erection of

scaffolding, the tearing off of the old roof, the construction of a new roof, and gable end and also the raising of the cupola. The cost of labor and material in making these changes would be substantial. We cannot conclude the suggested changes could be done at a reasonable expense and, under the facts in the present case, it is our holding the proper measure of damages would be the difference between the value of the building as it is and the value as it would have been if made under the provisions of the claimed agreement.

The rules heretofore set forth are substantially the same as noted in the Restatement of the Law of Contracts, section 346, pages 572, 573. This court has followed the general rule relative to the difference in value as previously stated and in the Iowa Annotations to the Restatement of the Law of Contracts, at page 552, there are noted certain Iowa cases which hold the building contractor who fails to properly perform a contract must pay the difference between the value that the improvement contracted for would have had if the contract had not been broken and the value of the performance that had been received. This is the measure of damages the defendant contends should have been applied in the consideration of the reception of plaintiff's evidence and in the giving of its instructions concerning it.

In Fallon v. Amond, 153 Iowa 504, 508, 133 N.W. 771, the measure of recovery sought was the difference in the value of land with or without the improvement contemplated, and the trial court admitted evidence bearing thereon. In the cited case this court approved of the ruling of the trial court.

A further case bearing on this same rule relative to the proper measure of damages was that of Cocklin v. Home Mutual Ins. Assn., 207 Iowa 4, 7, 8, 222 N.W. 368.

In Trunk & Gordon v. Clark, 163 Iowa 620, 625, 145 N.W. 277, 279, we made the following statement concerning the proper measure of damages under certain circumstances, as follows: "* * * but it would seem to be the rule of reason, as we think it is the rule of law, that where the defect complained of is of such character that it may be corrected without unreasonable or disproportionate expense, such expense will properly measure the damage so sustained; but if the defect be so inti-

mately connected with the body of the structure, or so inheres in some permanent part of such structure that it cannot be remedied at reasonable expense, or without tearing it down or rebuilding it, or some material part of it, then the rule suggested by the trial court would be applicable."

It is our conclusion the trial court did not adopt the proper measure of damages in its reception of evidence and in the instruction given. Consequently we hold in this respect there was error.

II. We make no comment and ruling on plaintiff's claim unnecessary lumber was used at a cost of $65.25 and his claim there was expense incurred in the amount of $216.35 in lowering the attic floor and thereby increasing the attic space from 6 to 7 feet. It is true there was no contradictory evidence introduced by the defendant. However, this may not be the situation on a retrial of the cause.

III. The defendant in various ways raised the contention and issue the plaintiff knew of and approved the manner of construction. It is also maintained the plaintiff waived any changes made and accepted them with full knowledge of the alteration in the plans. The plaintiff contradicts this claim.

We have examined the record and although we shall not set out the conflicting testimony we are convinced there was a disputed question of fact presented on the pleaded issues raised, and the court properly submitted these issues to the jury.

For the reason stated in Division I hereof the case is reversed and remanded for new trial.—Reversed and remanded.

OLIVER, C. J., and GARFIELD, SMITH, MULRONEY, HAYS, and THOMPSON, JJ., concur.

LARSON, J., specially concurs.

BLISS, J., takes no part.

LARSON, J. (concurring specially) In view of the fact that this case is to be retried, it should be kept in mind—as stated by the plaintiff in his testimony—the arrangement with the defendant was not a contractor bid job. This is evidenced by the fact the defendant was paid on a cost plus basis. It is obvious

1318

from a study of the evidence there were no specific plans and specifications as a part of any agreement. It is true a general plan provided by the manufacturer of a grain elevator was used as a guide in the planning of the building. However, the plaintiff approved of the pitch of the roof after a preliminary decision had been made as the result of placing the proposed rafters on the ground. The plaintiff was the architect more so than the defendant, who was only the builder. The plaintiff had altered the original plans regarding the width and length. It is quite apparent it was plaintiff's changes in the original plans which resulted in the lowered roof. It is also apparent the plaintiff desired and authorized the changes which were made without knowing or realizing what the result would be. When the changed plans did not work out satisfactorily plaintiff sought to blame the defendant. The resulting condition of the building was not brought about by reason of any error or mistake on the part of the defendant.

Under the facts disclosed in the evidence I would hold the defendant's motion for judgment should have been sustained. The evidence does not justify the submission of the case to the jury on this issue. The plaintiff failed to prove a definite contract, and where no contract has been proved there could be no breach of it and consequently there could be no recovery of damages. Upon retrial, if there is no material change in the evidence, the action against the defendant should be dismissed, except for any damage resulting from faulty workmanship.