LEONA DOSLAND, appellee, v. PREFERRED RISK MUTUAL INSURANCE COMPANY, Des Moines, Iowa, appellant.

No. 47904.

(Reported in 49 N.W.2d 823)

November 13, 1951.

Zastrow, Noah & Smith, of Charles City, for appellant.

Geiser, Donohue & Wilkins, of New Hampton, for appellee.

OLIVER, C. J.—March 3, 1949, plaintiff purchased a new automobile for approximately $3000 and insured it with defendant against damage caused by collision. The policy provides, "The company may pay for the loss in money or may repair or replace the automobile * * * or may take all or such part of the automobile at the agreed or appraised value * * *." It contains a $100 deductible provision.

Plaintiff's husband, Dr. M. O. Dosland, a chiropractor, used the car in his business. December 5, 1949, it collided with a truck and was extensively damaged. Plaintiff had it hauled to a garage

in New Hampton, Iowa, the town of her residence. Defendant was immediately notified by telephone, promptly investigated and offered to take the car and pay plaintiff $1800. Plaintiff did not accept the offer. Later Dr. Dosland telephoned defendant about accepting it and was told it "had been withdrawn and $1700 was now the offer."

Aside from securing bids for repairing the car defendant took no action until about February 20, 1950, when it removed the car to the garage of Knipschield Motor Sales Company in Charles City, without plaintiff's knowledge.

In the meantime, February 2, 1950, plaintiff's attorneys had written defendant's attorneys offering to accept the $1800 offer. In the letter reference was made to a proposed damage suit against Hassman, the owner of the truck which had collided with plaintiff's car, in which action plaintiff and defendant would co-operate. It was suggested it might be necessary to have plaintiff's car repaired to determine the amount of repairs for that suit. February 24 plaintiff's attorneys wrote they had received no reply to the letter and that Dr. Dosland informed them the local garage advised him someone had called and removed the car. They asked to be informed of the present status of the matter.

February 25 defendant's attorney replied, the insurance company advises "that in accordance with your letter it would be necessary to have the car repaired so that we would be able to determine the actual cost of restoring the same. The car is now at the Knipschield Motor Sales in Charles City, Iowa, being repaired. Under the circumstances it would seem that the best procedure to follow would be to start the action [against Hassman]. Please advise us as to your opinion of the necessary steps we should take."

February 27 plaintiff's attorneys replied: "What Dr. Dosland desires to know is what the company is going to do with reference to settlement of his claim under the policy. We wrote you stating the amount he was willing to settle for * * *." The letter stated also that if action was brought against Hassman the measure of damages would be the cost of repair, if the car could be repaired. "If the Knipschield Motor Sales Company, after carefully checking the car—can give an estimate * * * this in my

opinion would be sufficient for our purpose in proving up our claim for damages. However, this is entirely independent from Dr.'Dosland's claim against it [defendant]." March 3 defendant's attorneys wrote: "* * * the company is now taking steps to have the car repaired, and when restored, they will offer it to Dr. Dosland." April 25 plaintiff's attorneys wrote: "Dr. Dosland has inquired of us a number of times with reference to his collision loss on his car. The only information which he has is * * * that someone called [at the local garage] for the car some time ago and stated they were taking it to Charles City. We are wondering how long he will be required to wait before the company settles this loss?"

June 22, 1950, defendant's attorneys wrote they had been informed the automobile was ready to be delivered—"There are a few minor repairs to the trim of the car that have not yet been done, but this can be done very easily as soon as the parts are delivered, however, the car is now ready to operate." They requested Dr. Dosland be advised and inform them when and where he would like the car delivered.

July 7 plaintiff's attorneys wrote: "We understood from your conversation in our office this week also that the parts which were referred to in your letter (of June 22) had not yet been placed upon the car and that the car had not been repaired completely." The letter stated also that more than seven months had elapsed since the collision; that the company without the knowledge or consent of Dr. Dosland took the car from the O'Halleran garage and had since retained it; as a result of the prolonged delay there would be a considerable decrease in its sale value because of its added age of seven or eight months. The letter informed the company plaintiff would not accept the car.

At the time of the trial, in December 1950, defendant had not removed the car from the Knipschield garage in Charles City. Mr. Knipschield testified on cross-examination the drive master did not work properly and the car had a vacuum leak.

Plaintiff brought this action to recover the value of the car at the time of the collision. The jury was instructed that if it found for plaintiff it should reduce its verdict $100 on account of the deductible provision in the policy. There was a verdict for

1224

plaintiff for $2100. From the judgment thereon defendant has appealed.

■ I. Defendant assigns as error the overruling of its motion to require plaintiff to divide her petition into two counts. Defendant contends plaintiff pleaded one cause of action based upon the policy and another based upon conversion. Although there is a statement in the amended and substituted petition that defendant still had possession of and by its acts had converted the car, the action is based upon the contract of insurance only and the damages demanded are the value of the car immediately prior to the collision, under a provision of the policy. The order overruling the motion was correct.

■■ II. With its answer defendant filed a motion for cross-petition against new party, supported by affidavit, asking that Paul Hassman be brought into the case as a cross-defendant, alleging the action arose from a collision between plaintiff's automobile and Hassman's truck, under an insurance policy issued by defendant to plaintiff, and that defendant would have a right to subrogation against Hassman when it paid plaintiff the damage to plaintiff's automobile. Error is assigned to the order overruling this motion.

The motion was made under Rules of Civil Procedure, rule 33(b), which provides, "When a defendant * * * will, if held liable thereon, thereby be entitled to a right of action against one not already a party, he may move to have such party brought in, to the end that the rights of all concerned may be determined in one action."

Rule 33(b) does not require that the trial court sustain such a motion. Although this court has not passed upon the precise proposition, courts generally hold such motions are addressed to the sound judicial discretion of the court. In each case the controlling question is whether the granting of the motion will tend to better serve the interests of justice and expedite the litigation. General Taxicab Assn., Inc. v. O'Shea, 71 App. D. C. 327, 109 F.2d 671; Andromidas v. Theisen Bros., D. C. Neb., 94 F. Supp. 150.

In the case at bar the issues between plaintiff and defendant are so foreign to those of the proposed action against Hassman

that the two actions could not have been tried together advantageously nor without danger of confusion. Moreover, the making up of the issues in the new action would have delayed the trial of the original case. If the two actions could not be expeditiously tried together it does not appear defendant was, in this case, prejudiced in any way by the denial of its application. We conclude the order of the trial court overruling the motion was not an abuse of the discretion lodged in it.

III. Defendant complains of the order overruling its motion for directed verdict which was based upon the theory the record showed defendant elected to repair the automobile and did repair and tender the same to plaintiff in full compliance with the terms of the policy. The policy provides the company may pay for the loss, repair the automobile or take the automobile at the agreed or appraised value.

The record is undisputed that after the collision plaintiff's claim was promptly presented and defendant offered to take the automobile and pay plaintiff $1800, which defendant contended was the value of the car prior to the collision, less the $100 deductible. Plaintiff believed the value was greater and refused the offer. Shortly thereafter plaintiff retained attorneys who continued to negotiate with representatives of defendant upon the basis of payment to plaintiff of the value of the car. Connected with these negotiations was the proposed co-operation of the parties in an action for damages to be instituted against the owner of the truck which collided with plaintiff's car.

The letter of February 2, 1950, from plaintiff's attorneys mentioned having the car repaired to determine the cost of repair for such suit. The letter of February 25 from defendant's attorney states the company had advised him the car was being repaired for that purpose. February 27 plaintiff's attorneys again asked for settlement of plaintiff's claim under the policy, stating the repairing of the car, etc. was independent from plaintiff's claim against defendant. At no time prior to March 3 was it suggested to plaintiff's attorneys that defendant was having the car repaired for plaintiff. April 25 plaintiff's attorneys wrote: "We are wondering how long he will be required to wait before the company settles this loss?" This indicates they did not even then understand defendant was having the car repaired for plaintiff.

The record does not show whether defendant made any reply to that letter. June 22, four months after defendant had taken the automobile, plaintiff's attorneys were advised it was ready for delivery, and that there were a few minor repairs to the trim, which had not been made. Apparently these repairs had not been made by July 7, more than seven months after the collision. Moreover, the record shows repairs to the mechanism of the car, essential to its proper operation, had not been made when defendant tendered the car to plaintiff at the trial more than a year after the collision.

Defendant relies upon the rule stated in Home Mutual Ins. Co. of Iowa v. Stewart, 105 Colo. 516, 100 P.2d 159, where the policy gives the insurer the right to elect whether to repair or pay, the exercise of the option to repair converts the original contract into a contract to repair. See also Cocklin v. Home Mut. Ins. Assn., 207 Iowa 4, 222 N.W. 368; Zalesky v. Iowa State Ins. Co., 102 Iowa 512, 518, 70 N.W. 187, 71 N.W. 433; 46 C. J. S., Insurance, section 1195, page 130; 29 Am. Jur., Insurance, sections 1267, 1268, page 945; Sentinel Fire Ins. Co. v. Anderson, Tex. Civ. App., 196 S.W.2d 649. Hence, defendant contends no action may be maintained upon the policy for the value of the car.

The rule above-mentioned is subject to various refinements and exceptions, some of which are considered in the Home Mutual Ins. Co. case, supra. One of these is, that where, as here, no time is specified, the election must be made within a reasonable time. In the Home Mutual case the insurer offered to repair the auto six days after the accident, and nineteen days after the accident gave formal written notice of its election to do so, the owner having refused to give it possession for that purpose. The decision states at page 520 of 105 Colo., page 161 of 100 P.2d: "Under these circumstances, the election was made within a reasonable time."

Although there was some conflict in the record, there was substantial evidence in the case at bar that prior to March 3 defendant made no statement or suggestion to plaintiff or anyone for her it would elect to repair the car for plaintiff. We have already pointed out that as late as February 25 plaintiff's attorneys were advised by letter defendant was having the car repaired

at Charles City so the cost of repairs could be shown in the proposed suit against Hassman. The letter of February 25 could properly have been, and apparently was, interpreted by plaintiff's attorneys as notice defendant had elected to and was repairing the car, not for plaintiff, but for defendant itself and that defendant would take and pay for the car. Defendant's subsequent letter of March 3, stating it would offer the car to plaintiff "when restored", was written almost three months after the collision.

One question is whether the election, if any, was made within a reasonable time. Automobiles are relatively short lived. Their value depreciates rapidly. In most instances they are in daily use. Generally the time required to repair a damaged car may be measured in days or weeks. In the absence of a specific provision it would seem such units of measurement of time should have some relation to the time within which the insurer should exercise its option to repair or take the car. The record shows plaintiff's husband, a chiropractor, used the car in his business, and that a new car was purchased about January 20.

In Cohen v. Fort Dearborn Casualty Underwriters, 221 Mo. App. 741, 285 S.W. 1024, the policy gave the insurer the right to elect to replace a truck destroyed by fire. It did not offer to do so for seven weeks. The insured needed the truck in his business and was compelled to purchase a new truck. The court overruled defendant's contention it had not been given a reasonable time to replace the destroyed truck, and affirmed judgment for its value.

What is a reasonable time has been said to be a question compounded of law and fact. Each case must turn upon its own circumstances. The delay may be so brief or so long as to be clearly reasonable or unreasonable. Between these extremes the question may be doubtful. In such case it is a question of fact. Here the claimed election to repair the car for plaintiff was made almost three months after the collision. Under the circumstances we conclude the question whether that was within a reasonable time was a question of fact for the jury.

In the Home Mutual case, supra (page 521 of 105 Colo., page 161 of 100 P.2d), the court found also, "The letter of election * * * meets the test of being clear, positive, distinct and unambiguous * * *." In the case at bar defendant's letter of February 25 indi-

cated it had taken the car and was having the same repaired for itself. The letter of March 3 stated it would offer the car to plaintiff. We are not prepared to hold the statements in these letters, considered together, meet the test of being clear, positive, distinct and unambiguous, or that defendant having first given notice it was repairing the car for itself could thereafter bind plaintiff by giving notice of a contrary election. We hold the order overruling defendant's motion for a directed verdict was not erroneous.

■ IV. Defendant contends the proper measure of damages was the cost of repairing the car; that plaintiff failed to prove such cost and her damages; and that the court erred in admitting testimony of the value of the automobile, immediately prior to the collision. The answer to these contentions is that one method of settlement provided by the policy was for the insurer to pay for and take the car. The verdict of the jury must necessarily have been based in part upon a finding this method had been adopted. Hence, the value of the car before the collision was the proper measure of recovery.

V. Error is assigned to instruction 6 on the ground it sounds in tort and not in contract, and abrogates the provisions of the policy which gives defendant the right to repair. Instruction 6 merely submits to the jury the question whether defendant elected to settle the loss by taking the car on the basis of its value before the collision. It does not sound in tort and it does not rule out the claimed right of defendant to repair the automobile but permits the jury to determine that issue. We hold the instruction is not vulnerable to the assault made upon it.

VI. Instruction 6½ recites the policy provides defendant may pay plaintiff the actual cash value of the car prior to the damage or may repair it. Defendant contends this is a misstatement of the terms of the policy. From defendant's original objection in the trial court, we understand it is contended the policy provides defendant will be liable for the cash value only in event of the total destruction of the car. We do not find any such limitation in the language of the policy and conclude the objection is not well founded.

■ VII. Defendant assigns error to instruction 8 which concerns its counterclaim against plaintiff for the $100 deductible,

which defendant sought on the theory it had repaired the car for plaintiff under the terms of the policy. The verdict for plaintiff on her claim was necessarily based on findings which would bar recovery on the counterclaim. Hence, any error in instructions upon the counterclaim would be without prejudice. Smith v. Pine, 234 Iowa 256, 268, 12 N.W.2d 236; Davidson v. Vast, 233 Iowa 534, 544, 10 N.W.2d 12; 18.—Affirmed.

All JUSTICES concur.