121 N.J. Super. 470 (1972)
297 A.2d 865
RUDOLPH DWANE, PLAINTIFF,
v.
WEST AMERICAN INSURANCE CO., DEFENDANT.
Superior Court of New Jersey, Burlington County District Court.
Decided December 5, 1972.
*472 Messrs. Kent & Grayer, attorneys for plaintiff (Mr. Frederick R. Grayer appearing).
Messrs. Kessler, Tutek & Gottlieb attorneys for defendant (Mr. Myron H. Gottlieb, appearing).
WOOD, A.C., J.C.C.
This is an action for recovery under the collision provisions of an automobile insurance policy.
Plaintiff Rudolph Dwane, while driving his automobile in New York State on June 28, 1970, was involved in a serious accident. He and his wife suffered personal injuries and the automobile was extensively damaged. Both Mr. and Mrs. Dwane were removed to a hospital in Goshen, New York. The automobile, which was disabled, was towed to Anderson's Body Shop in Chester, New York.
The automobile was insured against collision damage by defendant company. Dwane, who was less seriously injured than his wife, notified the company of the accident by telephone call to its local agent in Cherry Hill, New Jersey. A week later, while Mrs. Dwane was still hospitalized in Goshen, Dwane saw the automobile at the Anderson shop. His observation, admittedly not with the eye of an expert, led him to believe that the damage was total and the automobile beyond repair.
Mrs. Dwane was confined to the hospital in Goshen for two weeks. Upon the return of the couple to Cherry Hill, Thomas Unger, a claim representative of defendant company, called on Dwane at his home and discussed with him at length the circumstances of the accident. A week later Dwane received from Unger a handwritten "Claim Memorandum" dated July 28, 1970, with which was enclosed a "Proof of Loss" with the request that the latter be signed and returned to the company. The "Claim Memorandum" stated that the "agreed figure for repair" was $1744.34 and that the "net claim" (the "agreed figure" less $50 deductible) was $1694.34.
*473 Dwane declined to execute the "Proof of Loss," being of the opinion, as he told Unger, that the automobile was not repairable. He asked that the car be towed to a place closer to his home so that he might "keep an eye on it." The request was refused, Dwane being informed that it was "company policy" to pay only for the towing of the vehicle from the scene of the accident.
The "agreed figure" set forth in Unger's "Claim Memorandum" was arrived at in this wise:
The claim was assigned by the company to an independent adjuster who engaged Ford's Appraisal Service, an automotive appraisal specialist in Goshen, to negotiate with Anderson's Body Shop with respect to the estimated cost of repairs. This appraiser prepared an estimate dated July 9, 1970 containing the statement that "When authorized, the below named (Anderson's Body Shop) will complete and guarantee the listed repairs for a total of $1744."
On receipt of this estimate, Unger sent the "Claim Memorandum" and "Proof of Loss" to Dwane. Plaintiff himself had no part in the negotiations between the appraiser and the body shop or in the preparation of the estimate. He was not told where repairs would be made. Moreover, it is inferable that he was never informed that the making or authorizing of repairs was his responsibility.
Having declined, as stated, to execute the "Proof of Loss," Dwane consulted his present counsel, Frederick R. Grayer. Grayer conferred with Unger and achieved an understanding that if the estimate were agreed to and the proof of loss executed accordingly, any undiscovered damage requiring further repair would be paid for by the company. This understanding was set forth in a letter by Grayer to Unger, dated August 14, 1970. With that understanding and subject thereto, Dwane, on counsel's advice, executed the "Proof of Loss" and returned it to the company. Thereafter defendant issued its check dated August 20, 1970 to the order of Rudolph Dwane for $1694.34. The check was received and deposited by Dwane.
*474 Anderson's Body Shop failed to return the automobile or to advise plaintiff that repairs were completed or even in progress. Repeated attempts by Dwane to communicate with them having proved fruitless, he again turned for help to Unger, who on February 23, 1971 addressed a letter to Anderson's Body Shop demanding advice as to the repair of the car and explanation for the long delay. So far as appears, there was no reply to that letter. On January 22, 1971 defendant company issued an additional check to Dwane in the sum of $50.
Plaintiff is still without his automobile. By this action he demands reimbursement for the total loss of the machine, crediting thereto, of course, the amounts which he has already received from the company.
The provisions of the policy respecting loss by collision are set forth in Part III and provide in pertinent part as follows:
Coverage E  Collision. To pay for loss caused by collision to the owned automobile * * * but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable thereto.
The deductible amount provided in this policy is $50.
Paragraph 11 of the "Conditions" of the policy is, by its terms, applicable to Part III. It provides for payment of loss as follows:
11. Payment of Loss  Part III. The company may pay for the loss in money; or may repair or replace the damaged * * * property; * * * or may take all or such part of the property at the agreed or appraised value but there shall be no abandonment to the company.
The undertaking is to pay for all loss occasioned by each accident in excess of $50. The option afforded by the condition above quoted as to the manner of payment of the loss does not in any way relieve the company of its liability to pay all of such loss.
*475 The company rests its defense on three principal grounds:
1. That it had a right to, and did elect, to pay money to plaintiff in satisfaction of his claim;
2. That plaintiff, rather than defendant, made the agreement with Anderson's Body Shop for the repair of his vehicle, and his remedy, if any, is against Anderson.
3. That plaintiff's damages were the result of the negligence of a third party (i.e., Anderson) over whom defendant had no control.
4. That plaintiff in executing the "Proof of Loss" elected to receive the sum therein set forth in full satisfaction and discharge of all loss under the policy.
The first three contentions may be considered together.
Following the accident plaintiff's automobile was removed from the scene by persons over whom he had no control. Thereafter, although he saw the automobile on one occasion, he was unable to and did not exercise any control over the vehicle, nor did he have any say whatever in the evaluation or handling of his loss. The company, through its adjuster and appraiser, handled all the negotiations with Anderson. Plaintiff relied on the company. I am satisfied and find as a fact that he was led by the company to believe that the company would see to the repair and return of the vehicle. Indeed, when first asked to sign the "Proof of Loss" he declined to do so until his attorney received a clear understanding set forth in his letter of August 14, 1970, that the acceptance of the damage figure set forth therein was subject to the reservation that if repairs were not complete, any subsequently discovered damage arising out of the accident would be paid for by the company. Defendant, under the circumstances, could not, by the device of a cash payment to plaintiff, short-circuit its obligation to pay all loss arising from the collision.
Defendant's contention that plaintiff, rather than defendant, contracted with Anderson for the repairs of his vehicle is simply not borne out by the evidence. Plaintiff had no choice as to the place to which his car was removed. He *476 had no dealing with Anderson's Body Shop and no direct communication with them except his many fruitless telephone calls to ask about his car. The negotiations were all conducted by defendant's representatives, and, as stated, plaintiff was led to sign the proof of loss only upon the representation and in the belief that his car would be completely repaired and returned to him.
Surprisingly, the question of the nature and extent of the obligation of an insurer under the collision provisions of an automobile policy seems to have been dealt with very little, if at all, by the courts of this State. However, the applicable principles which appear to have been established by decisions in other jurisdictions are set forth in 6 Appleman, Insurance Law and Practice § 4005 at 716-728. Discussing the option to repair provided in the policy, Appleman says:
Likewise, the exercise of the insurer's option to repair must be reasonable as respects the place where the repairs are to be made, and whether the place selected is reasonable depends upon the particular facts of the case. In addition, the election must be unequivocal and cannot be coupled with an offer of compromise or used as a means to effect a compromise. An insurer's submission to the insured of a proof of loss based on its adjuster's contract for repairs, and its subsequent payment of the amount named therein constituted recognition of the adjuster as an agent authorized to adjust the claim. And the action of the adjuster in taking a car to a garage, securing estimates for repairs, and making a contract for repairs, warranted an inference that the insurer had elected to repair rather than pay money damages. [at 719-720]
Cf. Council v. Sun Ins. Office of London, 146 Md. 137, 126 A. 229, 51 A.L.R. 29 (Ct. App. 1924).
And further,
An insurer electing to repair must perform within a reasonable time. And an insurer which exercises its option to repair is liable to the insured for an unreasonable delay in making the repairs, *477 assuming, of course, that the insured suffered damage from such delay. [at 722]
And
If the insurer elects to repair, such repairs must make the car as serviceable as it was before the loss. Moreover, the insurer has been held to be obligated to replace the automobile where it could not make such repairs as were sufficient to restore the automobile to its condition prior to being damaged. [at 726]
Dugas v. Insurance Co. of St. Louis, 134 So.2d 634 (La. App. 1961).
In the instant case I am satisfied that the company, by its conduct, made a binding election to repair the automobile. It could not avoid that election by taking from the insured a proof of loss (which the insured clearly executed under a mistaken impression, encouraged by the company, that it would secure the repair and return of the car) and paying a sum of money pursuant thereto. The car not having been repaired or returned, although over two years have elapsed since the accident, I conclude that plaintiff has been totally and permanently deprived of his automobile and defendant is liable under its policy for the total loss sustained thereby.
Plaintiff's automobile was a 1967 Buick Riviera, purchased in January 1967 for a price of $5890. It contained a considerable number of "optional features." Plaintiff testified that at the time of the accident the car had been driven about 34,000 miles. He estimated the value of the automobile immediately before the accident to be $3300. (The statements in the repair estimate as to mileage and value are hearsay and are disregarded.) I find plaintiff's entire testimony to be candid, truthful and credible. His opinion as to the value of his car being uncontradicted by any credible evidence, I accept it. The defendant having paid $1744.34, it is liable for the difference between that figure and the loss *478 sustained. No allowance should be made for salvage value. Defendant may recover the car and secure the salvage, if any. Judgment will be entered in favor of plaintiff for the sum of $1555.66 and costs.