LEONA BROWN *et al.*, Plaintiffs-Appellants, *v.* STATE FARM FIRE AND CASUALTY CORP., Defendant-Appellee.

(No. 74-37; 

Third District—December 8, 1975.

890

Wolslegel & Armstrong, of Ottawa (Craig Armstrong, of counsel), for appellants.

Hupp & Irion, of Ottawa (Eugene P. Daugherty, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion:

This is an appeal from a judgment entered on a verdict directed at the close of complainant's case in favor of defendant, State Farm Fire and Casualty Corp., on a second amended cross complaint by Frank Thompson, a/k/a Eddie Jackson, its insured, to recover damages deriving from defendant's alleged breach of its automobile insurance policy. The action was originally commenced by plaintiff, Leona Brown, in two counts, one against State Farm and the other against her nephew, Thompson (hereinafter referred to by his alias, "Jackson"). The court dismissed plaintiff Brown's cause against State Farm and she voluntarily dismissed her count against Jackson when he filed the second amended cross complaint against State Farm. That pleading alleged that the cross complaint was filed for the benefit of Mrs. Brown, as assignee, she being the surety on Jackson's obligation for the purchase price of the insured vehicle. Both Jackson and Brown, therefore, are aligned as plaintiffs with State Farm as defendant. Mrs. Brown also appeals the court's order dismissing her original complaint against State Farm.

Plaintiffs' evidence showed that on September 30, 1969, Jackson, as principal, with his aunt, Leona Brown, as surety, executed a retail installment contract for the purchase by Jackson of a new Ford automobile for $3,330.39. The retailer assigned the contract without recourse to First National Bank of Ottawa, which also received a promissory note of plaintiffs. Plaintiffs purchased from defendant, State Farm, a policy of insurance on the vehicle with collision and property damage coverages, among others. The policy was issued to Jackson with a loss payable clause to the bank. The collision coverage provisions at paragraph D

obligated defendant to pay for all loss occasioned to the Ford by collision, but only in excess of a deductible amount of $100. At page 7 of the policy, it was provided in respect to collision coverage D, that the defendant-insurer should have the option in the case of damage to settle the collision claim of its insured in any one of three ways; to wit, (1) by paying for the loss in money not in excess of the actual cash value of the property (immediately before the collision), or (2) by repairing the damaged vehicle, or (3) by replacing it with property of like kind and quality considering depreciation and the deductible.

Under coverage B of the policy, defendant-insurer promised insured that it would pay also for all property damage insured should become legally obligated to pay which was caused by accident arising out of the use of the insured Ford, including under "Supplementary Payments" in respect to coverage B, the cost of premiums on bonds to release attachments. At coverage H, defendant-insurer undertook to pay the reasonable expense of towing the insured vehicle to the nearest garage for repairs.

On December 9, 1969, which defendant admits by its pleading to have been within the policy period, Jackson, while operating his insured vehicle became involved in a collision at Paducah, Kentucky, with a vehicle operated by Harlan Smith, who was also insured by defendant. Smith immediately procured a Kentucky attachment on the Jackson vehicle as security for his loss, court costs and storage. State Farm was immediately notified of the loss by Mrs. Brown.

After notification by Mrs. Brown, for Jackson, defendant denied coverage on the Jackson vehicle, refused to pay Smith his deductible amount under coverage B of Jackson's policy, or to pay the premium on a bond for the release of the Kentucky attachment, or to tow the Ford vehicle anyplace. The Jackson auto remained in Kentucky under the attachment which was also security for accumulating storage costs. As late as March 12, 1970, defendant wrote Mrs. Brown demanding that she pay it, State Farm, as subrogee, for the sums it paid Harlan Smith under his collision coverage. Under this view taken by State Farm, that Jackson was at fault, it was, of course, defendant's obligation, as Jackson's insurer, to pay Smith's full claim including his deductible for which the attachment had been issued and was maintained.

Because of defendant's denial of coverage under Jackson's policy, and the consequent failure to pay Smith his deductible, the Jackson vehicle remained unavailable and under attachment in Kentucky until February 7, 1970, when First National Bank of Ottawa repossessed by reason of plaintiffs' default on the installment contract. Accordingly, the bank then advanced to Smith in Kentucky the sum of $190 for release

of his attachment, paid an additional $86.40 for transportation of the Jackson vehicle back to Ottawa where it was repaired in July, 1970, for $453.62. All of these advancements by the bank were added back to plaintiffs' account where interest was accruing. In December, 1970, the bank authorized the repaired vehicle to be sold for $2,100. Thereafter, on January 27, 1971, defendant for the first time acknowledged coverage by paying to the bank $500.62 which the bank accepted in settlement of defendant's liability under the Jackson policy, without the consent or authorization of plaintiffs. These sums in the aggregate of $2,600.62 were credited by the bank to plaintiffs' account, leaving a deficiency balance in excess of $1,000, some of which appears to represent an interest liability from the time of the collision. There was evidence that the fair cash market value of the Jackson vehicle on January 1, 1970, was $2,700; that three weeks was an adequate period for making repairs; and that the vehicle would depreciate $630 from window price during the first three months. The evidence is not clear as to the balance due the bank at the time of the collision.

■■ The settlement effected by State Farm with First National Bank of Ottawa on January 27, 1971, without the consent of the insured does not operate as a release of the insurer's liability to Jackson as its insured. At most, it fixes the extent of the bank's right to participate in the proceeds of what may be due under the policy; the amounts paid to the bank by the insurer operated in such circumstances, only as a credit against amounts due from the insurer to the insured. A mortgagee of property for whose benefit the property is insured, even where the proceeds are payable to him as his interest may appear, is without authority in case of loss to effect a full settlement of the claims of the mortgagor without the latter's consent. (See Annot., 130 A.L.R. 598, 604 (1941); 44 Am. Jur. 2d *Insurance* § 1703 (1969).) The rights of the mortgagor and mortgagee become fixed *as of the date of the loss* on December 9, 1969, so far as the insurer is concerned (Annot., 46 A.L.R. 2d 992, 993 (1956)), and the subsequent foreclosure or repossession by the bank did not terminate Jackson's insurable interest. 43 Am. Jur. 2d *Insurance* § 487 (1969); 8 Ill. L. & Pr. *Chattel Mortgages* § 120 (1954).

■■ Mrs. Brown, as surety on the insured's obligation to the bank (see *South Side Bank & Trust Co. v. Yorke*, 15 Ill.App.3d 948, 305 N.E.2d 367 (1st Dist. 1973); Ill. Rev. Stat., ch. 26, § 3—415); had a legal right at any time to discharge her principal's obligation to the bank and to become subrogated to the bank's right to proceed against the insurer for amounts due under Jackson's policy. The bank cannot impair or diminish the surety's right to become subrogee, and to the extent it does so by executing a release to the insurer without her consent for

amounts less than are due, it discharges her as surety pro tanto. (*Chicago Bridge & Iron Co. v. Reliance Insurance Co.*, 46 Ill.2d 522, 264 N.E.2d 134 (1970); cf. *Watkins Products, Inc. v. Walter*, 11 Ill.App.3d 417, 296 N.E.2d 859 (5th Dist. 1973).) As an alternative remedy, however, she may take an assignment from the mortgagor-insured of any excess claim of his against the insurer and proceed against the insurer, in her own name by right of statute (Ill. Rev. Stat., ch. 110, § 22), or in the name of the insured, by right of common law (6 Am. Jur. 2d *Assignments* § 127 (1963)), as his assignee, for the excess liability. The claim of an insured under a policy is assignable after the loss occurs. *Ginsburg v. Bull Dog Auto Fire Insurance Association*, 328 Ill. 571, 160 N.E. 145 (1928).

Where, as here, the contract of insurance with Jackson gave the insurer, in respect to collision coverage D, three separate options for making settlement, without specifying the time within which the elections must be made, all the cases which have considered the question have held that the election must be made by the insurer within a reasonable time after the loss. Annot., 29 A.L.R.2d 720, 727 (1953).

In *Dosland v. Preferred Risk Mutual Insurance Co.*, 242 Iowa 1220, 49 N.W.2d 823, 29 A.L.R.2d 712 (1951), plaintiff-insured's automobile was damaged on December 5, 1949, and at no time prior to March 3, 1950, did the insurer authorize repairs. Plaintiff thereupon commenced an action against the insurer for the full value of the automobile immediately prior to the collision. The court, reasoning that automobiles are relatively short-lived, *that they depreciate rapidly in value*, and that the time required to repair them is normally measured in days or weeks, stated at 242 Iowa 1220, 1227, N.W.2d 49 823, 828:

"What is a reasonable time [for the insurer to make its election] has been said to be a question compounded of law and fact. Each case must turn upon its own circumstances. The delay may be so brief or so long as to be clearly reasonable or unreasonable. Between these extremes the question may be doubtful. In such case it is a question of fact. Here the claimed election to repair the car for plaintiff was made almost three months after the collision. Under the circumstances we conclude the question whether that was within a reasonable time was a question of fact for the jury."

A verdict for plaintiff in that case was sustained.

In *Smith v. Farm Bureau*, 98 N.H. 420, 101 A.2d 778 (1953), the court, in interpreting a collision coverage provision of a policy giving the insurer an election as to the manner of settling a collision loss, after

citing *Dosland,* held that such election must meet the test of being *clear, positive, distinct, and unambiguous.*

■■ In *Resolute Insurance Co. v. Mize,* 221 Ark. 705, 255 S.W.2d 682 (1953), the insurer had an option under the collision coverage of the policy to pay for the loss in money or to repair or replace the vehicle. The insured was stationed at Little Rock and several estimates for his insured truck were obtained from repair shops in North Little Rock ranging from $4219.07 to $2395.95. A concern in Tulsa, Oklahoma submitted a low bid of $1849.61 and the insurance company offered to have the vehicle repaired there. The insured refused to accept the offer in respect to a garage at a distant point in another state and insurer made no other offer. The court held that the offer in respect to Tulsa was unreasonable and justifiably refused and that, in view of the insurer's failure within a reasonable time to make a reasonable election, the proper measure of damage was the difference between market value of the truck immediately before the collision and the market value immediately after. A judgment for insured for $3800 *plus interest* and statutory penalties, *including attorney fees, was affirmed.* In *Dwane v. West American Insurance Co.,* 121 N.J. Super. 470, 297 A.2d 865 (1972), the court held to the same effect.

■■ These foregoing principles have been accepted as law in Illinois. In *Howard v. Reserve Insurance Co.,* 117 Ill.App.2d 390, 254 N.E.2d 631 (1st Dist. 1969), the insured sustained a fire loss to his building. The policy contained a settlement option provision in favor of the insurer under which it could purchase the damaged property at appraised value, or repair, rebuild or replace the damaged property with other property of like kind and quality within a reasonable time. The fire loss occurred June 14, 1963, and notice of loss was given on June 17. On June 25, defendant insurer wrote insured a letter that it would insist upon compliance with all policy provisions, and called special attention to its right of option. Negotiations began in respect to an appraisal of the damage but no agreement was reached. Thereafter, with insurer's knowledge, insured began and completed the repairs without objection from the insurer. Insured then submitted its bills for the cost of the repairs and insurer denied coverage on the grounds that insured had breached the policy provisions by denying its right to elect among the settlement options. The trial court held for the insured, and the appellate court affirmed by adopting language from the case of *German Insurance Co. v. Hazard Bank,* 126 Ky. 730, 735, 104 S.W. 725, 726 (1907):

> "In insurance contracts, as in all other contracts, it is incumbent upon the parties to deal with each other in a plain, simple, and

straightforward manner, and, where an election is to be exercised under a contract, notice should be made in such manner as to leave no doubt in the mind of the opposite party of an intention to exercise it."

Referring to the case of *Home Mutual Insurance Co. v. Stewart*, 105 Colo. 516, 100 P.2d 159 (1940), the Illinois court in *Howard*, 117 Ill. App.2d 390, 399, 254 N.E.2d 631, 635, also adopted five criteria as essential for making notice of election by insurance companies effective:

" '(1) It must be made within a reasonable time after the damage or loss has occurred to the insured.

(2) It must be clear, positive, distinct and unambiguous.

(3) The repairs or replacements must be made within a reasonable time.

(4) It cannot be coupled with an offer of compromise or be made for the purpose of forcing a compromise, but it must be an election made with no alternative.

(5) When the election is made, the repair or replacement must be suitable and adequate.' "

In *Mettille v. Gulf Insurance Co.*, 107 Ill.App.2d 439, 246 N.E.2d 55 (3rd Dist. 1969), the court, in an opinion by Justice Alloy, adopted substantially the same rules and because of the insurer's *six-month* delay in notifying insured as to its election of options, sustained insured's right to recover the value of his damaged automobile immediately prior to the collision in the amount of $3275 plus consequential damages including interest on that value at 5% per annum, plus reasonable attorney fees under the statute.

On appeal from a directed verdict for defendant, our inquiry is directed to a consideration of whether there is any competent evidence in the record which, taken with all reasonable inferences therefrom most favorable to plaintiffs under the allegations of the second amended cross-complaint, tend to prove the elements of that cause. *McKendree v. Christy*, 29 Ill.App.2d 195, 172 N.E.2d 380 (3rd Dist. 1961); *Schwartz v. Peoples Gas Light & Coke Co.*, 35 Ill.App.2d 25, 181 N.E.2d 826 (1st Dist. 1962); 74 Am.Jur.2d *Trial* §§ 498, 500 (1974).

■■ According to the proof at the close of plaintiffs' evidence, defendant not only declined for more than one full year to make any election whatever, but wrongfully denied coverage. Defendant instead made demands on Mrs. Brown for sums it paid Smith under his collision coverage on the theory that Jackson was at fault. Having adopted the theory that Jackson was at fault, defendant aggravated the circumstances by refusing to pay Smith his deductible claim under coverage B of Jackson's policy, thereby provoking the circumstances by which Smith

obtained a writ of attachment in Kentucky on Jackson's insured vehicle as security for his deductible claim, court costs and accruing storage charges. Defendant, by denying coverage aggravated the problem further by declining its obligation under Jackson's policy to pay the premium for release of the attachment, and declined the policy obligation in Jackson's contract to transport his vehicle to the nearest garage for repairs. It made no election in "clear, positive, distinct, and unambiguous" terms to settle for plaintiffs' loss under any of the options, but wrongfully denied coverage until January 27, 1971, when it paid the bank an amount which the proof tends to show as being clearly less than what was due. Neither the attachment nor the repossession by the bank, which was an additional insured, prevented the insurer from making its election within a reasonable time. So far as is shown by the record at the close of plaintiffs' proof, defendant's election came too late, as a matter of law, since no justifiable reason for the long delay was shown. The fact that repairs were made by the bank and charged to plaintiffs' account, after many months of delay and denial of coverage, in mitigation of further loss by prolonged depreciation should not inure to the benefit of the insurer. The proof at the close of plaintiff's evidence tended to establish a right of recovery for the value of the vehicle immediately prior to the collision with interest and other incidental expenses and a right of recovery for fees under section 155 of the Illinois Insurance Code (Ill. Rev. Stat., ch. 73, § 767). The circuit court manifestly erred in withdrawing the case from the jury by directing a verdict for defendant at the close of plaintiffs' case, and in entering judgment thereon.

■■ We find no reversible error in the order dismissing Mrs. Brown's original complaint against State Farm. That pleading failed to allege facts tending to show that she had paid the debt to First National Bank of Ottawa so as to have become subrogated to its rights under the policy either by operation of law or by contract. Neither does it allege that she, by right of assignment, had succeeded to the claim of Jackson. The cases cited by plaintiff in support of her contention that she had a right to sue as third-party beneficiary of the insurance contract do not in our opinion, support such a thesis.

At section 54 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 54) it is provided as follows:

> "If by reason of * * * assignment, or any other event occurring after the commencement of a cause * * * either before or after judgment, causing a change * * * of interest * * * it becomes * * * desirable that * * * any person already a party be made party in another capacity, the action does not abate, but on motion an order may be entered * * * that the

cause \* \* \* be carried on \* \* \* with or without a change in the title of the cause."

When the action was originally commenced by Mrs. Brown as plaintiff, against State Farm and Jackson as defendants, Mrs. Brown thereby submitted herself to the general jurisdiction of the court as a party. Subsequent thereto Jackson filed the second amended cross-complaint against State Farm alleging, as required by section 21(3) of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 21(3)), the fact of an assignment of his claim against defendant to Mrs. Brown and that the cause is prosecuted by him on her behalf as a usee-plaintiff, or beneficiary. Under this allegation, it was clear that Mrs. Brown had a purported interest which the judgment might affect, and was a proper party to the action within the meaning of section 25(1) of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 25(1)) even though in another capacity and without a change in the title of the cause. (Ill. Rev. Stat., ch. 110, § 54.) We conclude that the court erred in excluding proffered evidence of the assignment by Jackson to Mrs. Brown of his claim against State Farm.

The judgment of the circuit court is reversed and the cause is remanded for new trial, and it is ordered that plaintiffs' costs herein be taxed against defendant pursuant to section 22 of "An Act \* \* \* in relation to costs" (Ill. Rev. Stat., ch. 33, § 22 et seq.).

STOUDER and ALLOY, JJ., concur.