**Hans VAN NES ALLEN, Appellee,**

v.

**HOME INDEMNITY COMPANY, Appellant.**

No. 51072.

Court of Appeals of Oklahoma, Division No. 2.

Nov. 20, 1979.

Released for Publication by Order of Court of Appeals Dec. 20, 1979.

W. P. Huckin, Jr., Tulsa, for appellee.

Thomas E. Steichen, McGivern, Scott & Steichen, Tulsa, for appellant.

NEPTUNE, Judge.

Plaintiff Allen in July of 1976 brought an action on a policy of insurance covering a Rolls Royce automobile and alleged that the car was damaged by a collision in July of 1971 in the amount of $13,898. Plaintiff further alleged that he suffered damages of $592 for towing charges and $6000 in damages while the car was in the possession of defendant insurer. Defendant answered and alleged that the damage as a result of the collision was $790 and that any additional damage to the car while it was in the possession of the car dealer awaiting repairs was excluded by the policy.

The case was tried before the court without a jury, and a judgment was entered for plaintiff in the amount of $15,826.23 plus interest. Defendant insurer appeals.

The record shows the following facts. On July 6, 1971, plaintiff Allen, a resident of Tulsa, was the owner of a 1961 Rolls Royce Silver Cloud automobile. The vehicle was insured by defendant Home Indemnity Company. On the day mentioned, plaintiff was at his farm in Virginia. He left the farm that day to drive his daughters to the airport in Lynchburg, Virginia so that they could fly back to Tulsa. As he drove away from the farm, an animal darted in front of his vehicle. Plaintiff swerved the car to avoid hitting the animal and in so doing caused the car's underside to strike a concrete culvert. Though obviously damaged, the vehicle was driveable.

Plaintiff took the car to a private garage in Lynchburg and notified defendant insurer by telephoning its Roanoke, Virginia office. He requested that the insurance company send someone to Lynchburg to examine the car because he believed he had done body damage to a large extent. The Lynchburg garageman declared the job "too big" for him, so the car was taken back to plaintiff's farm. Defendant's agent who examined the car at plaintiff's farm estimated the damage at $251.50. Meanwhile, during the initial telephone conversation between plaintiff and defendant the carrier had directed plaintiff to take the vehicle to Mooers Motor Car Company in Richmond. Plaintiff advised defendant that Mooers was terribly slow in getting repairs done, and he suggested to the insurer that it would be better for the company as well as himself if he were allowed to take the car to a friend in New York who could fix the car immediately and cheaper than anyone else. Defendant's agent James responded that defendant wanted the car taken to Richmond. In October 1971, the car was towed to Mooers, the Rolls Royce agency in Richmond.

The car remained at Mooers for about a year during which period both the garage personnel and the defendant repeatedly assured plaintiff that they would get the vehicle repaired promptly. During that year virtually nothing was done in the way of repair. The car sat out-of-doors and during the winter months the engine block cracked beyond repair. Eventually, in October of 1972, defendant told plaintiff that he could take the car wherever he wished and the insurer would pay for the towing.

Plaintiff brought the car to Jimmie Leake's in Muskogee, Oklahoma. There, witness Causon, whose Rolls Royce experience spans 25 years—15 of it in England—and who keeps Leake's fleet of 30 to 40 Rolls Royces in running condition, examined the subject vehicle. He found severe damage due to "riding the high point of the culvert or ditch and scraping the underpart of the car full length." The frame had been twisted so that the right hand tack of the car was one inch shorter than the left. Other specific findings were:

"The hood has been sprung, radiator cowl damaged, and the radiator fan damaged. The engine mountings have moved.

The engine moved to the right of the car. Power steering ram and bracket damaged.

Front chassis cross member damaged.
Right front suspension A frame damaged.
Front engine mounting cross member bent.
Left hand track rod bent.
Right hand chassis side rail slightly bent.
Both left hand doors are jammed.
Trunk lid has sprung.
Speedometer drive is broken.
Front bumper and apron are bent."

The expert also stated in his report that to repair the accident damage—"providing the frame isn't sprung so badly that we cannot adjust the geometry of car . . ."— would cost approximately $2500. The damage due to the car sitting out was estimated at $3000 for the engine and $4000 to $4500 because of rust. Most of this damage would not have occurred had the car been properly cared for during the period after the accident. This estimate, approximately $10,000 when initially made in October 1972, was opposed by a damage appraisal made on behalf of defendant company by witness McMains dated October 13, 1972, and December 29, 1972, listing the total damage at $790.65. In January 1975, witness Causon updated the damage amount to reflect increases in labor and parts to the total of $14,000. At trial time the updated amount was stated to be about $18,800.

## I

Appellant's first proposition is that the trial court erred in failing to strictly construe the insurance contract. Appellant argues that the contract contains a specific exclusion of "damage which is due and confined to wear and tear, freezing . . ." as well as a condition that the policy "shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire liable for loss to the automobile . . ." and that these provisions were totally disregarded by the trial court.

■ Contrary to appellant's conclusion, the trial court did not disregard the provisions mentioned. The trial court recognized the existence of the provisions, but in effect held that they were not applicable in the particular circumstances of this case. In dealing with the problem of the damage

occurring while the car was in possession of the Rolls Royce dealer in Richmond, the trial court in effect held that the insurer was in possession of the car and was directing the repairman, and therefore could not rely upon the "freezing" exclusion or the "bailment" condition for the resultant increase in plaintiff's damage. Because the insurer refused the suggestions of plaintiff and demanded a particular placing of the car for repair, with which demand plaintiff complied, it had taken charge of the property and should be accountable for the results free from the operation and application of the exclusions and conditions ordinarily chargeable to the insured. Results of cases involving somewhat similar circumstances hold the insurer liable for losses when the insurer takes charge of the repair. See *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667 (1974); *Dwane v. West American Ins. Co.*, 121 N.J.Super. 470, 297 A.2d 865 (Dist.Ct.1972).

Relief of the insurer in the circumstances of this case from responsibility for consequential damages would involve an excessively strict construction of the contract and one not intended in the ordinary meaning of the terms thereof. We agree with the trial court that the exclusion and condition relied upon by insurer are not applicable in the circumstances of this case.

## II

Appellant's second proposition is:
"The plaintiff's evidence was insufficient to prove (1) that he met the conditions precedent to recovery under the terms of the policy, (2) the value of the vehicle, or (3) the cost of repairs as a result of the collision."

Appellant argues that plaintiff did not prove the value of the vehicle and did not prove the amount of collision damages.

■ It is correct that the proof on these specific issues is not as clear-cut as is desirable, but the record as a whole sustains the conclusions that the conditions precedent, the value of the vehicle, and the collision damage amount are adequately proved.

The trial court specifically held that the conditions precedent had been satisfactorily

met or had been waived by the insurance company. As to the proof of the value of the car, witness Causon testified that its value at the time of the collision was about $12,000. As to the proof of the cost of repairing the collision damage, Causon first separated the collision damage estimate of $2500 from that arising from other causes as previously mentioned in our summary of the facts. The record makes clear that the major portion of the total damage claimed was not from the collision directly and also shows that the value of the car exceeded the cost of repairs.

The trial court disallowed some items of claimed damage that it concluded were outside of that produced by the collision or the ill-fated repair undertaking. The disallowance was in the amount of $3000 attributable to interior trim et cetera and in the amount of $566 for a master cylinder. The trial court allowed appellee the increases in cost of repair which occurred because of the delay in accomplishing the repair.

The foundation of recovery therefore was that the insurer was in control of the repair effort, and in failing to complete the repair or pay appellee the loss it breached the contract of insurance. With these findings and conclusions we agree. The second proposition affords no basis for reversal.

### III

Appellant's last proposition is that:

"The trial court erroneously created a theory in assessing the increased cost of repairs as a proper measure of damages."

Appellant's argument and authorities do not clearly address or support the stated proposition. Decided cases, however, confirm the propriety of the trial court's holding. Where an insurer delays settlement for a period during which costs of repair increase, the insurer is liable for the increased cost of repairs. *Aycock v. Republic Insurance Co.*, 116 So.2d 317 (La.Ct.App. 1959).

Affirmed.

BACON, P. J., and BRIGHTMIRE, J., concur.